Filed 3/10/22

CERTIFIED FOR PARTIAL PUBLICATION*

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| HEBAH ABDELQADER, | D078652 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 18FL012730C) |
| ABDO ABRAHAM, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of San Diego County, Sharon Kalemkiarian, Judge. Affirmed in part; reversed in part; remanded with directions.

Law Office of Melissa J. Schmitt and Melissa J. Schmitt, for Plaintiff and Appellant.

Cage & Miles and John T. Sylvester, for Defendant and Respondent.

Hebah Abdelqader appeals an order following a bifurcated trial wherein the superior court denied Hebah's request for a restraining order against her ex-husband, Abdo Abraham, and granted joint physical custody of

---

* Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of part I.

the couple's children, A.A. and G.A.[1] Hebah claims the court made multiple errors when determining she had not met her burden of proving domestic violence. In addition, Hebah asserts the court erred in failing to articulate, on the record or in writing, the reasons it found the presumption under Family Code[2] section 3044 had been rebutted.

In the unpublished portion of this opinion, we conclude that the court did not abuse its discretion in denying Hebah's request for a restraining order. However, in the published portion of the opinion, we agree that the court erred in failing to state the reasons, on the record or in writing, it found the presumption under section 3044 had been rebutted. As such, we reverse the judgment as to that issue only and remand the matter for further consideration consistent with this opinion.

FACTUAL AND PROCEDURAL BACKGROUND

Hebah and Abdo were married on March 3, 2007. They have two children together, A.A. (age 11) and G.A. (age 5). Hebah and Abdo separated on September 16, 2018. On October 26, 2018, Hebah filed a petition for dissolution.

However, before she filed a petition for dissolution, on October 10, 2018, Hebah filed a request for a domestic violence restraining order. In her request, Hebah claimed Abdo verbally abused her in August 2018, while they were riding a train from Venice to Rome. She also alleged Abdo was verbally and physically abusive during an argument at their home on September 16, 2018. Based on these allegations, the court issued a temporary restraining

---

[1]     As is customary in family law cases, we will refer to the parties by their first names. (*Noergaard v. Noergaard* (2015) 244 Cal.App.4th 76, 81, fn. 2.)

[2]     Statutory references are to the Family Code unless otherwise specified.

2

order against Abdo and set a hearing on October 29, 2018, to consider further action on the request.

There is no indication in the record whether a hearing took place on October 29, but the court issued another temporary restraining order on March 27, 2019 and set a hearing regarding the restraining order for September 19, 2019. On May 22, 2019, Hebah filed an ex parte application to terminate the temporary restraining order and take the related hearing off calendar. In support of her application, Hebah declared that she was "no longer in need of protection" and made the request "of [her] own free will" and had "not been coerced or threatened in any way by the restrained person or anyone else to make this request." Abdo also signed the request, attesting that he had "not coerced or threatened the protected party in any way to make this request."

On May 23, 2019, the court granted Hebah's application, terminating the restraining order, vacating the September 19, 2019 hearing date, and dismissing the action.

On March 9, 2020, Hebah filed another request for a restraining order against Abdo. The facts of the underlying abuse giving rise to Hebah's request is not in the record before us; however, the superior court issued a temporary restraining order and set a hearing on March 25, 2020. The hearing subsequently was continued to June 12, 2020.

At the June 12 hearing, the court ordered the issues of Hebah's request for a restraining order as well as custody and visitation of the children to be bifurcated and set for trial on July 8 and 9, 2020.

The court held the trial on July 8 and 9, 2020, at which both Hebah and Abdo testified. Hebah began her testimony by offering background information about her relationship with Abdo before they were married as

3

well as incidents of violence occurring before she applied ex parte to dismiss the temporary restraining order in May 2019. The court explained that it was focused on "what happened since the last restraining order had been dismissed" but ultimately gave Hebah wide latitude so she would "be able to tell the story the way she want[ed] to tell it." Thus, Hebah discussed incidences of domestic violence that occurred before she dismissed the restraining order.

For example, she testified about an incident that occurred on a train from Rome to Venice on August 14, 2018. Apparently, Abdo had become upset with Hebah when she did not want to be intimate with him. When they got on the train, he called her names and threatened that he would "bash [her] head in the wall when [they] got back to the hotel." Abdo also shoved Hebah with his shoulder. While next to Abdo, Hebah could not move but eventually she asked to use the bathroom and Abdo allowed her to do so. When Hebah returned, Abdo appeared asleep, so she sat four rows in front of him. When he awoke, he ordered Hebah to sit next to him. After Hebah complied, Abdo continued to berate her.

On September 16, 2018, Abdo walked into the bedroom and found Hebah reading on her smartphone. Abdo asked what she was reading, and Hebah responded that she was reading an article about unwanted pregnancies and birth control. Abdo became upset and threw a bottle of shampoo at Hebah (but did not hit her). When Hebah tried to leave the room, Abdo charged at her, hit her in the back, grabbed her arm, dragged her to the back of the room, and then hit Hebah's back and head into the bedroom wall. Hebah was afraid and asked Abdo to let her go, but he did not do so until Hebah asked again. Hebah left the room; however, Abdo took her phone. Abdo followed Hebah downstairs and continued to call her names. Hebah

4

returned upstairs and locked herself in the bedroom.[3]  Hebah testified that she did not call the police because Abdo had previously threatened to harm her if she reported any domestic violence to the authorities.  Also, Hebah did not want her children to see their father dragged out of their home by the police, and, in the village from which the couple came, it was taboo for a wife to call the police on her husband.

The next day, Hebah went to the Family Justice Center to seek help. From September 18 through September 27, 2018, she locked herself in the bedroom every evening.  However, on September 27, Abdo left for Florida and did not return until October 9.  After Abdo's return, Hebah slept separately from him, with her room locked.  The following day, Hebah filed for a restraining order.  Hebah was notified that the sheriff's office had served Abdo with the restraining order that same day.

At trial, Hebah discussed why she dismissed the restraining order in May 2019.  She admitted that she was feeling pressure from her family as well as Abdo's family to settle her dispute with Abdo.  In addition, Hebah was experiencing financial pressure because she was "tens of thousands of dollars into the case" and was in a "lot of debt."  Hebah also said that Abdo was pressuring her to dismiss the restraining order.  While the restraining order was in place, Abdo and Hebah talked on the phone multiple times, with Abdo asking her to dismiss her request for a restraining order.  They even met in person, and Abdo again told Hebah "to drop the restraining order."

---

[3]    There were additional interactions between Abdo and Hebah after she locked herself in the bedroom, some of which Hebah recorded on her phone. The audio recording was played for the court, and the court admitted the recording into evidence.  On the audio recording, Abdo, among other things, admitted to hitting Hebah and made thinly veiled threats.

Hebah admitted that she voluntarily traveled to court on May 22, 2019, to seek dismissal of her request for a restraining order. Before she arrived at court, she contacted Abdo to let him know what she was doing. Hebah testified that she chose to dismiss her request because she wanted "peace for [their] family" and "what's best for [their] children." That said, Hebah also claimed that she did not "think [she] was in [her] right mind" at that time.[4]

Hebah admitted that after she dismissed the restraining order action there was no further physical violence from Abdo. Nevertheless, she pointed out other instances that she believed warranted a new restraining order.

For example, during a February 29, 2019 telephone call with the children, Abdo "flat-out threatened" Hebah (the call was conducted on speaker phone).[5] Also, on March 6, 2019, Hebah had coffee with another parent of a student at A.A.'s school. After coffee, she dropped the friend off at the school parking lot. At that time, she did not see Abdo in his car. However, when she was pulling out, she saw Abdo parked in the school parking lot. When Abdo saw Hebah leaving the lot, he sped off in his car over a cement block.[6]

---

[4] During cross-examination, Hebah admitted that her testimony that she was coerced to dismiss the request for a restraining order conflicted with deposition testimony wherein she stated she was not coerced.

[5] Hebah also testified about two other phone calls between Abdo and A.A. After one, A.A. experienced a panic attack. After another, A.A. ran out of the room, saying his father was going to kill him.

[6] Abdo testified that March 6 was his custodial day for the children, but he wanted to avoid "family Friday" at the school for fear that he would run into Hebah. So, he decided to pick up his son at 5:00 p.m. After picking up his son, he returned to school so his son could use the bathroom. When he did so, he noticed Hebah driving toward him. Thus, he immediately left and accidentally drove over a berm on the way out.

On March 9, 2019, Hebah filed for, and was granted, a temporary restraining order.

In addition, beginning in July 2019, Hebah started seeing Abdo driving by her home. Because he had previously threatened her, Hebah testified that seeing him driving by her house frightened her.

Hebah also testified about an incident that occurred in August 2019 at an urgent care facility. One of their sons, A.A., was injured in a BMX accident and was taken to urgent care. While at urgent care, Abdo was verbally abusive toward Hebah. Abdo, however, claimed he was being harassed by Hebah's family because one of the family members was recording him. Ultimately, Abdo called the police. The police allowed Hebah to leave with A.A. and told Abdo to wait for Hebah to leave before he left.

In addition, Hebah testified about an incident that occurred at A.A.'s school on December 19, 2019 wherein Abdo and his mother approached Hebah's car outside the school. Both G.A. and Hebah's sister were in the car. Abdo and his mother were making a video recording of the car and asking Hebah's sister questions. Abdo also was on the phone with the police. Hebah, at this time, was not in the car. However, Hebah's sister called Hebah. Hebah took G.A. from the car and took him to the playground. G.A. was upset. Abdo and his mother followed them to the playground, and Abdo's mother continued to record them. Hebah explained that she felt unsafe and afraid for her children. Hebah and her sister also recorded the interaction on their phones after they moved away from the car.[7]

According to Abdo, he and his mother approached the car because he had concerns that Hebah's sister was unlicensed and uninsured but still

_____

[7] The multiple videos of the incident were admitted at trial. These videos included video from a car camera on Hebah's car.

driving A.A. and G.A. to and from school. His mother was primarily asking Hebah's sister whether she was insured. The disagreement appeared to be between Abdo's mother and Hebah's sister. Also, there was some evidence that the car was registered in Abdo and his mother's names.

Finally, Hebah testified about a problem she experienced during a visitation exchange of the children. The court had made temporary visitation orders on June 12, 2020.[8] Shortly after the court made its visitation order, when Hebah went to pick up the children from Abdo at the exchange location, Abdo did not show up. Hebah could not get in contact with Abdo. After the parties' lawyers became involved, Abdo returned A.A. and G.A. to Hebah at 10:00 a.m. However, during cross-examination, Hebah admitted that Abdo told her that he was confused about the exchange time and took A.A. to a class and brought both kids to an agreed place to give them to Hebah at 10:00 a.m.

Regarding custody of the children, Hebah admitted that she and Abdo had been successfully practicing a "50/50" timeshare for a few months and the children were "doing well." Abdo testified that he had been complying with the court ordered visitation schedule and that the children were enjoying their time during visits.

At the close of testimony, the court indicated that it was "ready to make some orders." To this end, the court found that Abdo committed domestic violence in August and September 2018. As such, the court found that the presumption codified in section 3044 applied. Nevertheless, the court stated

---

[8] The court made an interim order that removed the children as protected parties under the temporary restraining order, awarding Hebah sole legal custody of the children and awarding Abdo joint physical custody, with his visitation occurring every weekend from Friday at 2:00 p.m. to Monday at 8:00 a.m.

that it was not granting a restraining order based on Hebah's March 2020

filing, explaining:

> "I understand that there was domestic violence in 2018. But the fact that you did dismiss it, I think knowing what you were doing—I'm not at all faulting that you did that. You can't bring that back in to have me make the DV [domestic violence] request in March only based on that because I have to find you have now a reasonable apprehension of harm, whether it's disturbing the peace or something else. So that's what I have to look at.

> "Well, there is no physical aggression. I have controverting testimony on the car. And given how you love to record and he loves to record, I'm surprised I don't have a recording of him driving around your neighborhood. I have one incident where you believe you're saying he yelled in Arabic at you. I tend to think that probably happened. I don't believe you, [Abdo], 100 percent, I have to say, when you say that never happened. But I don't think I would on that incident, even if I say it happened, say that it was domestic violence. Because yes, it would have disturbed your peace, but it wasn't happening repeatedly. So, whatever caused it to happen that night or day, you didn't tape it. I don't have a very good record of it.

> "And then the taping of the school, while I find it embarrassing and really very childish on everybody's part, I don't think that's DV. She wasn't there. It might have disturbed your peace when you came up and saw mom and —and—and [Abdo] were recording, but I do believe there was a dispute over who was driving the car and whether they had insurance because that's the first thing you responded to. I think your mom was harassing her, [Abdo]. And you should tell your mother if she had gone to court, she probably would have gotten a restraining order against her; a civil one. You don't go around taping people even if they're driving your car because she is driving the car with her permission. If she wants her car back, then she should take her car back. But she's driving it. And that would be

9

very unfair to the kids if you did that. So I don't find that to be domestic violence even in the disturbing of the peace.

"And the other incidents that are cited in here, just so I don't miss one, the Birney school incident in December, the February driving around the—I don't have good evidence about driving around the neighborhood. And the March incident, I think I believe [Abdo], and I didn't see that he was threatening you in any way. And, in fact, he tried to get away.

"So, as to the schedule—so I don't believe there is enough to meet the burden by a preponderance of the evidence as a domestic violence in March. And that the 2018 incidents do cause the Court to make a finding of domestic violence, and the 3044 presumption is in place."

The court then awarded legal custody of the children to Hebah. However, the court continued the previous interim order sharing physical custody of the children with both Hebah and Abdo.

The court subsequently entered a judgment, which included a four-page written explanation of its reasoning, including findings of fact. The court reiterated that it found the presumption in section 3044 to apply but did not discuss that presumption any further.

Hebah timely filed a notice of appeal.

DISCUSSION

I

DENIAL OF THE RESTRAINING ORDER

Hebah contends the trial court erred in denying her request for a restraining order. We disagree.

The purpose of the Domestic Violence Prevention Act (DVPA) (§ 6200 et seq.) is to "prevent acts of domestic violence, abuse, and sexual abuse and to provide for a separation of the persons involved in the domestic violence for a period sufficient to enable these persons to seek a resolution of the causes of

10

the violence." (§ 6220.) To further this purpose, a court may issue an order to restrain any person if an affidavit or testimony provided to the court shows "reasonable proof of a past act or acts of abuse." (§ 6300.) A party seeking a restraining order has the burden to prove a past act of abuse by a preponderance of the evidence. (See *Gdowski v. Gdowski* (2009) 175 Cal.App.4th 128, 137.)

"Abuse" includes, among other acts, placing a person in "reasonable apprehension of imminent serious bodily injury" or any behavior that could be enjoined under section 6320, such as "attacking" or "harassing" conduct, or "disturbing the peace of the other party." (§§ 6203, subds. (a)(3), (4), 6320, subd. (a); see *In re Marriage of Nadkarni* (2009) 173 Cal.App.4th 1483, 1498.)

Placing a person in reasonable apprehension of imminent serious bodily harm requires either a pattern of physical abuse or threatening conduct toward the victim seeking protection. (See *Gou v. Xiao* (2014) 228 Cal.App.4th 812, 814-815, 818 [court reversed order denying a restraining order request wherein wife was in "reasonable apprehension of imminent serious bodily injury" because husband bit her on the arm, and wife watched husband place child in a chokehold, whip with a stick, and strike on numerous occasions]; *Pugliese v. Superior Court* (2007) 146 Cal.App.4th 1444, 1450 [estranged wife sufficiently alleged being placed in a "reasonable apprehension of imminent serious bodily injury" because estranged husband "shoved, pushed, kicked, hit, slapped, shook, choked and sexually abused her. She also alleges he pulled her hair, pinched and twisted her flesh, threatened to kill her, threatened her with bodily harm, confined her in the family car while driving erratically and drunkenly and infected her with sexually transmitted diseases"].)

11

" ' "[D]isturbing the peace of the other party" in section 6320 may be properly understood as conduct that destroys the mental or emotional calm of the other party.' " (*Burquet v. Brumbaugh* (2014) 223 Cal.App.4th 1140, 1146.)

"[T]he trial court considers whether the totality of the circumstances supports the issuance of" a restraining order under the DVPA. (*McCord v. Smith* (2020) 51 Cal.App.5th 358, 366; § 6301, subd. (c).) We review the grant or denial of a restraining order under the DVPA for abuse of discretion. (See *Gonzalez v. Munoz* (2007) 156 Cal.App.4th 413, 420.) "[A]n abuse of discretion occurs where ' " 'the trial court exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court.' " ' However, the question of 'whether a trial court applied the correct legal standard to an issue in exercising its discretion is a question of law [citation] requiring de novo review.' [Citation.]" (*Cueto v. Dozier* (2015) 241 Cal.App.4th 550, 560.) The superior court's order "is presumed to be correct, and all intendments and presumptions are indulged to support it on matters as to which the record is silent. [Citation.] It is the appellant's burden to affirmatively demonstrate error. [Citations.]" (*In re Marriage of Gray* (2002) 103 Cal.App.4th 974, 977-978.)

Here, Hebah claims the court erred in not granting a new restraining order because: (1) it found Abdo committed domestic violence in August and September 2018; (2) the court incorrectly found that Hebah was not present during the December 19, 2019 interaction between Abdo's mother and Hebah's sister in the school parking lot; and (3) the court erred when it did not find that Abdo violated the temporary restraining order when he

12

dispatched his sister to visit Hebah at her home on October 19, 2018 to pressure her to dismiss the restraining order action.

As a threshold matter, we note that Hebah does not discuss the applicable standard of review (abuse of discretion) or explain how the court abused its discretion in denying her request to grant a restraining order. Instead, she merely points to alleged errors and claims the superior court should have granted her the requested order. For example, she notes that the court found that Abdo committed domestic violence against Hebah in August and September 2018. And although "[a] trial court is vested with discretion to issue a protective order under the DVPA simply on the basis of an affidavit showing past abuse" (*Nakamura v. Parker* (2007) 156 Cal.App.4th 327, 334), Hebah does not elucidate why these two past events of domestic abuse warranted a restraining order some two years later. Further, it is clear the superior court carefully considered those past acts and weighed them against what was occurring more recently. To this end, the court noted that Hebah dismissed the previous temporary restraining order based on the domestic violence in August and September 2018, specifically finding "[s]he knew what she was doing when she dismissed the restraining order." Additionally, the court found there had been "no physical aggression since October 2018" and Hebah "does not have now, in July 2020, a reasonable apprehension of harm." We also note that the court did not find any of the interactions following Hebah's dismissal of the temporary restraining order constituted domestic violence, and Hebah does not challenge these findings on appeal.

Similarly, we do not find merit in Hebah's argument that the court incorrectly found she was not present during the events on December 19, 2019. The court found that Hebah "was not there" when Abdo and his

13

mother first confronted and recorded Hebah's sister in the car at the school parking lot. Indeed, substantial evidence supports such a finding because Hebah testified that her sister called her to inform her what was happening. Moreover, the court specifically noted that Hebah later approached the car and saw Abdo and his mother recording the interaction with her sister. And Hebah's claim of error is further undermined by the court's conclusion that the December 19 incident did not constitute domestic violence.

Finally, we summarily reject Hebah's claim that the court erred when it did not find that Abdo violated the temporary restraining order when he allegedly dispatched his sister to visit Hebah at her home on October 19, 2018, to pressure her to dismiss the restraining order action. Hebah's argument is primarily based on a recording of her interaction with Abdo's sister. However, the court listened to the recording and did not admit it into evidence, finding it was not relevant. Hebah claims she is challenging this evidentiary ruling, but she does not provide any legal authority to support her position or make any arguments why the court abused its discretion in excluding the evidence. Accordingly, she has waived any such argument here.[9] (*Duarte v. Chino Community Hospital* (1999) 72 Cal.App.4th 849, 856; *Nielsen v. Gibson* (2009) 178 Cal.App.4th 318, 324.) In addition, Hebah does not explain how a finding that Abdo violated a temporary restraining order she ultimately dismissed established the need for a restraining order at the trial in July 2020.

---

[9] Hebah points to certain text messages between Abdo and his sister that were admitted into evidence. However, she does not explain how these texts show the court abused its discretion in denying her request for a restraining order.

14

## SECTION 3044 PRESUMPTION

The trial court explicitly found the presumption under section 3044 applied. Hebah claims the court erred in failing to articulate, either on the record or in writing, the reasons it found the section 3044 presumption rebutted. We agree.

Section 3044 establishes a rebuttable presumption that an award of joint or sole custody to a parent who has perpetrated domestic violence is not in a child's best interests. (*Ellis v. Lyons* (2016) 2 Cal.App.5th 404, 415.) Section 3044 provides: "Upon a finding by the court that a party seeking custody of a child has perpetrated domestic violence within the previous five years against the other party seeking custody of the child . . . there is a rebuttable presumption that an award of sole or joint physical or legal custody of a child to a person who has perpetrated domestic violence is detrimental to the best interest of the child, pursuant to Sections 3011 and 3020. This presumption may only be rebutted by a preponderance of the evidence." (§ 3044, subd. (a).)

The section 3044 "presumption is mandatory and the trial court has no discretion in deciding whether to apply it: '[T]he court *must* apply the presumption in any situation in which a finding of domestic violence has been made.' " (*Celia S. v. Hugo H.* (2016) 3 Cal.App.5th 655, 661 (*Celia S.*).) The presumption applies if any court has made a finding that the party seeking custody has perpetrated domestic violence within the past five years; the finding need not have been made by the family law court. (*Ellis v. Lyons*, *supra*, 2 Cal.App.5th at p. 416, citing § 3044, subd. (d)(2).) "[A] finding of

15

domestic abuse sufficient to support a DVPA restraining order necessarily triggers the presumption in section 3044." (*S.M. v. E.P.* (2010) 184 Cal.App.4th 1249, 1267.)

Although mandatory, the presumption is rebuttable. Subdivision (b) of section 3044 sets forth the factors a court must consider when assessing if the presumption has been rebutted. First, the court must be satisfied that the award of custody is in the child's best interest. (§ 3044, subd. (b)(1).) Second, the court must be satisfied that on balance, the six additional enumerated factors support an award of custody. Those factors include whether the perpetrator has successfully completed a batterer's treatment program, drug or alcohol counseling, and/or a parenting class, also, whether the perpetrator is on probation or parole, is the subject of a restraining order, or has committed further acts of domestic violence. (§ 3044, subd. (b)(2).) If the court determines the presumption has been rebutted, it must state the reasons for its decision in writing or on the record. The statement of reasons must address all of the factors outlined in section 3044, subdivision (b). (§ 3044, subd. (f); *Jaime G. v. H.L.* (2018) 25 Cal.App.5th 794, 805.)

Finally, section 3044, subdivision (g), provides: "In an evidentiary hearing or trial in which custody orders are sought and where there has been an allegation of domestic violence, the court shall make a determination as to whether this section applies prior to issuing a custody order, unless the court finds that a continuance is necessary to determine whether this section applies, in which case the court may issue a temporary custody order for a reasonable period of time, provided the order complies with Sections 3011 and 3020."

Here, it is undisputed that the trial court found that the section 3044 presumption applied. However, there is no indication in the record that the court provided the necessary statement of reasons addressing each factor outlined in section 3044, subdivision (b). (See § 3044, subd. (f); *Jaime G. v. H.L.*, *supra*, 25 Cal.App.5th at p. 805.) In the respondent's brief, Abdo concedes as much but contends the doctrine of implied findings controls because Hebah did not request a statement of decision. We disagree.

" 'Under the doctrine of "implied findings," when parties waive a statement of decision expressly or by not requesting one in a timely manner, appellate courts reviewing the appealed judgment must presume the trial court made all factual findings necessary to support the [order] for which there is substantial evidence.' " (*In re Marriage of McHugh* (2014) 231 Cal.App.4th 1238, 1248.) "In other words, the necessary findings of ultimate facts will be implied and the only issue on appeal is whether the implied findings are supported by substantial evidence." (*Espinoza v. Shiomoto* (2017) 10 Cal.App.5th 85, 100.) The doctrine of implied findings "is a natural and logical corollary to three fundamental principles of appellate review: (1) a judgment is presumed correct; (2) all intendments and presumptions are indulged in favor of correctness; and (3) the appellant bears the burden of providing an adequate record affirmatively proving error." (*Fladeboe v. American Isuzu Motors Inc.* (2007) 150 Cal.App.4th 42, 58.)

In the instant matter, Abdo has not provided any authority wherein a court applied the doctrine of implied findings to the requirements of section 3044. Indeed, none of the cases on which Abdo relies involved the section 3044 presumption. (See *A.G. v. C.S.* (2016) 246 Cal.App.4th 1269, 1281; *In re Marriage of Condon* (1998) 62 Cal.App.4th 533, 550, fn. 11.) Moreover, our independent research has not found any case where an

17

appellate court held that a trial court does not have to comply with the requirements of section 3044 unless a party requests a statement of decision. The reason for this absence is clear. Section 3044 is not triggered by whether a party requests a statement of decision. Further, such a request (or the absence of such a request) does not impact a court's duty to follow section 3044 whatsoever.

A trial court's obligations under section 3044 begin once the court makes a finding of domestic violence. (See *Celia S.*, *supra*, 3 Cal.App.5th at p. 661.) Moreover, the statute is explicit that the court must consider the factors set forth in subdivision (b) and, if the court determines that the presumption has been overcome, it must state its reasons in writing or on the record. (§§ 3044, subd. (f)(1) ["It is the intent of the Legislature that this subdivision be interpreted consistently with the decision in *Jaime G. v. H.L.* [,*supra,*] 25 Cal.App.5th 794, which requires that the court, in determining that the presumption in subdivision (a) has been overcome, make specific findings on each of the factors in subdivision (b)"]; 3044, subd. (f)(2) ["If the court determines that the presumption in subdivision (a) has been overcome, the court shall state its reasons in writing or on the record as to why paragraph (1) of subdivision (b) is satisfied and why the factors in paragraph (2) of subdivision (b), on balance, support the legislative findings in Section 3020"].) There is no requirement in section 3044 that a party must first request a statement of decision before a court must comply with subdivision (f) of the statute. In fact, a statement of decision is not mentioned anywhere in the statute. And we will not read any such language into section 3044. (See *People v. Ellis* (2019) 31 Cal.App.5th 1090, 1094 ["Moreover, it is not the province of this court to insert words or add

18

provisions to an unambiguous statute"].)  As such, the doctrine of implied findings does not relieve a court of its obligations under section 3044.

In the alternative, Abdo asserts that if we determine the court failed to comply with section 3044's requirements then any such error is harmless. We disagree.  Here, the court clearly found the section 3044 presumption applied.  At that point, if the court found the presumption rebutted, it was mandatory that the court make specific findings on each of the applicable factors (see § 3044, subd. (f)(1)) and state its reasons in writing or on the record why, as to each factor, the court has found the presumption rebutted (see *id*., subd. (f)(2)).  There is no requirement under statute that a party request a court to make such findings.  Rather, the explanations of a finding and the discussion of the factors is mandatary under section 3044.  Moreover, the doctrine of implied findings does not relieve the court of this statutory mandate.

In the instant action, the court awarding joint physical custody to Hebah and Abdo suggests it found the presumption rebutted.  Yet, it is undisputed that the court neither made the mandatory findings under section 3044, subdivision (f)(1) nor explained its findings in writing or on the record as required by subdivision (f)(2).  As such, we must reverse and remand this matter back to the superior court so it may properly consider section 3044, and if it determines the presumption has been rebutted, then it can provide a statement of reasons on the record or in writing.

## DISPOSITION

The judgment is reversed in part and the case is remanded to the trial court for a new hearing that complies with the statutory requirement of an express statement of reasons that specifically mentions each of the seven

19

section 3044 factors.  In all other respects, the judgment is affirmed.  Each party shall bear his or her own costs on appeal.


HUFFMAN, J.

WE CONCUR:


McCONNELL, P. J.


HALLER, J.