Filed 4/21/23  T.W. v. M.S. CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| T.W., | D080174 |
| Plaintiff and Respondent, | |
| v. | |
| M.S., | (Super. Ct. No. DN188889) |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, James A. Mangione, Cynthia Freeland, Margo Lewis Hoy, and Victor M. Torres, Judges.  Affirmed.

M.S., in pro. per., for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

In 2016, plaintiff/mother T.W. and defendant/father M.S. had a son, C. Shortly after C.'s birth, the parties became embroiled in litigation that has

now spanned over six years, leading to four separate appeals currently pending before this court.[1]

In this particular appeal, M.S., who is appearing in propria persona as he did throughout the trial court proceedings, seeks reversal of the August 11, 2021 order denying his petition for a domestic violence restraining order (DVRO) against T.W. (Petition) under the Domestic Violence Prevention Act (DVPA) (Fam. Code, § 6200 et seq.).[2]  M.S. claims the trial court applied the wrong legal standard and acted unreasonably when it refused to grant the Petition.  He also claims a violation of his due process rights.[3]

As we explain, we disagree with M.S.'s claims of error and affirm the August 11 order.[4]

---

[1]    See also D079500 (M.S.'s appeal from the June 4, 2021 judgment (Judgment) providing among other relief that (1) T.W. may relocate to New York with C., and (2) T.W. shall have sole legal custody of C., with the trial court reserving jurisdiction to reconsider custody); D079984 (T.W.'s appeal from the June 30, 2021 order denying her request to permanently renew the DVRO against M.S.); and D080542 (T.W.'s appeal from the February 28, 2022 order reducing M.S.'s child support obligation).

[2]    Further statutory references are to the Family Code.

[3]    Based on his opening brief, M.S. also appears to be appealing issues decided in D079500.  We therefore decline to address here any claims of error by M.S. that arise in connection with that separate appeal.

[4]    We note T.W. did not file a respondent's brief in the instant appeal. "However, we do not treat the failure to file a respondent's brief as a 'default' (i.e., an admission of error) but independently examine the record and reverse only if prejudicial error is found." (*Kennedy v. Eldridge* (2011) 201 Cal.App.4th 1197, 1203; see *In re Bryce C.* (1995) 12 Cal.4th 226, 232–233 [same].)

# I. RULES GOVERNING APPELLATE REVIEW

As a preliminary matter, we address the rules of procedure that govern this appeal.

Although M.S. is representing himself, self-representation does not excuse a party's obligation to furnish a satisfactory record. An appellant who chooses to self-represent must follow the same rules that apply to lawyers. (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246–1247 (*Nwosu*).)

It is axiomatic that a trial court's judgment or order is presumed to be correct. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564; *Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956.) Accordingly, an appellant has the burden of showing error. To do so, the appellant must present this court with an adequate record for review (*Ballard v. Uribe* (1986) 41 Cal.3d 564, 574–575), regardless of whether that record is prepared by counsel or, as in the instant case, by a party (*id.* at p. 575; *Nwosu, supra,* 122 Cal.App.4th at p. 1246).

California Rules of Court, rule 8.122(b)[5] sets out the required contents of a clerk's transcript, M.S.'s choice of record. In addition to other requirements, a clerk's transcript "must" include "[a]ny . . . document filed or lodged in the case in superior court" pertaining to the issue(s) on appeal (rule 8.122(b)(3)(A)) and "[a]ny exhibit admitted in evidence, refused, or lodged" (*id.*, (b)(3)(B)).

In the instant appeal, noticeably absent from the clerk's transcript is M.S.'s Petition, including any supporting paperwork such as declaration(s)

---

[5]    All further rule references are to the Rules of Court.

and/or the exhibits he lodged in support thereof.[6]  (See *Christie v. Kimball* (2012) 202 Cal.App.4th 1407, 1412 ["To the extent the [trial] court relied on documents not before us, our review is hampered.  We cannot presume error from an incomplete record."].)  Without these documents, it is nearly impossible for us to assess whether the court erred in denying the Petition.

M.S.'s failure to comply with the rules pertaining to preparation of the clerk's transcript has also led to rule violations relating to his appellate brief.  Rule 8.204(a)(1)(C) requires a party filing a brief to "[s]upport any reference to a matter in the record by a citation to the volume and page number of the record where the matter appears."  Here, M.S.'s brief includes myriad facts without citation to the record; and, to the extent such citations do exist, many of them refer to portions of the 36 "exhibits" M.S. lodged in support of the instant appeal *and* the appeals in the related cases.

Moreover, M.S. also has failed to comply with rule 8.204(a)(2)(C), which requires an appellant to "[p]rovide a summary of the significant facts limited to matters in the record."  Here, M.S. essentially concedes his summary of

---

[6]     Instead of including the exhibits in support of the Petition, as required by rule 8.122(b)(3)(B), M.S. lodged more than 500 pages of "exhibits" covering a wide-range of topics/issues that, per his caption in the notice of lodgment, apply not only to the instant appeal but also to the other appeals pending in this case.  We have reviewed each of these 36 "exhibits" and are unable to determine which, if any of them, were actually considered by the trial court in ruling on the Petition.  As such, and because our review—with certain exceptions not applicable here—is limited to the record that was before the court when it denied the Petition, we decline to consider any of the 36 lodged "exhibits" in resolving this appeal.  (See *Center for Biological Diversity v. Department of Conservation* (2018) 26 Cal.App.5th 161, 170 [" 'It has long been the general rule and understanding that "an appeal reviews the correctness of a judgment [or order] as of the time of its rendition, upon a record of matters which were before the trial court for its consideration." ' "].)

"significant facts" is one-sided and in violation of this rule, as he recounts what he considers to be the "tru[e]" facts, as opposed to setting forth all material facts, both favorable *and* unfavorable to his position. (See *Nwosu, supra*, 122 Cal.App.4th at p. 1246 [appellants who challenge the decision of a trial court based upon the evidence " ' "are required to set forth in their brief *all* the material evidence on the point and *not merely their own evidence*" ' "].)

Despite the insufficiency of the record, M.S.'s failure in his brief to summarize all material facts with proper citations to the record, and his confusing brief that at times lacks coherent legal argument, in the interest of justice we will do our best to address his claims of error in this appeal, relying on the clerk's transcript he provided in this particular appeal[7] and the reporter's 14-page transcript from the August 11, 2021 hearing, in which the trial court denied the Petition for a permanent DVRO.[8]

## II. FACTUAL AND PROCEDURAL OVERVIEW

During their short relationship, M.S. and T.W. had a child, C., born in August 2016. Litigation between the parties began shortly after C.'s birth. In June 2018, T.W., on behalf of herself and C., obtained a DVRO against

---

[7] We note that many of the documents included in the clerk's transcript appear to have little or no relevance to the issues in this appeal. By way of example only, included in the clerk's transcript is M.S.'s supplemental declaration filed on January 3, 2022 in support of his motion for child support and travel costs; an ex parte application he also filed on January 3 in support of his "OST re: Birth Certificate" involving his ongoing effort to be added to C.'s birth certificate; and a January 24, 2021 minute order in which the trial court took under submission M.S.'s request for modification of child support.

[8] Confusingly, as part of the reporter's transcript in the instant appeal, M.S. included the trial court's March 28, 2022 minute order containing its settled statement, which does not appear to involve the denial of M.S.'s Petition that is the subject of the instant appeal.

M.S. for a three-year term, which included no visitation between M.S. and C. After a four-day bench trial in February 2021, the trial court on March 30 issued a final statement of decision and ruling (SOD), which was subsequently incorporated into the Judgment.

M.S. filed his petition on July 20, 2021. The trial court denied M.S.'s request for a temporary restraining order, and set a hearing for August 11 on his request for a more permanent restraining order.

At the outset of the August 11 hearing, M.S. moved to admit four unidentified exhibits and a transcript from the June 20, 2018 hearing in which the trial court had issued the DVRO in favor of T.W. and C. When the trial court inquired of the relevancy of the June 20 transcript, M.S. responded, "[I]t's all part and parcel of a long history of parental alienation of lies, deceit, [and] perjury" by T.W. The court admitted the four exhibits into evidence but sustained T.W.'s objection to admission of the June 20 transcript.

M.S. then reviewed the history of the parties' litigation, including findings made by the trial court in connection with the June 2018 DVRO in favor of T.W. and C., and those allegedly[9] made in the SOD and resulting Judgment.

With regard to the latter, M.S. argued the trial court had found T.W. showed a "lack of judgment" by involving M.S.'s older child L. in the parties' custody dispute over C.; that T.W. had hired a private investigator who in

9    We say "allegedly" because the SOD and Judgment were not included in the clerk's transcript in the instant appeal. Although M.S. included them as "exhibits" in his general notice of lodgment, because on this record it appears neither was "admitted in evidence, refused, or lodged" during the proceedings leading to the August 11, 2021 order denying his Petition, we do not consider either document. (See rule 8.122(b)(3)(B).)

turn contacted L.'s mother in Africa through a social media account, offering to "help" L.'s mother obtain custody of L.; that in finding these posts "disturbing," the court concluded T.W. was "not credible" when she claimed to have been unaware of the existence of them; and that it found "strong evidence" T.W. would never support a relationship between M.S. and C.

In further support of his Petition, M.S. argued that T.W. had lied to medical professionals about C.'s condition after the child had suffered a seizure, putting C.'s "safety in jeopardy"; and that T.W. had acted improperly in seeking to suspend M.S.'s visitation with C. over a "dog-bite issue" that the child allegedly suffered while in M.S.'s care, which injury M.S. instead claimed had been caused by a "palm frond." Based on this history, M.S. argued T.W. was doing everything possible to alienate him from C., thus supporting issuance of a DVRO against T.W.

Ruling from the bench, the trial court denied M.S.'s Petition. In so doing, it found that M.S.'s Petition was merely a "continuation of the ongoing custody dispute" between the parties; that, because there was no "physical contact" by T.W. against M.S., it was required to consider "whether or not there's been a destruction of [M.S.'s] peace of mind"; and that the evidence proffered by M.S. was insufficient to make this showing. The court memorialized its decision in an August 11, 2021 minute order.

### III.  DISCUSSION

**A.    Trial Court Did Not Abuse Its Discretion in Denying the DVRO**

#### 1.    *Guiding Principles*

##### a.    The DVPA

Under this statutory scheme, "a court is authorized to issue a protective order ' " 'to restrain any person for the purpose of preventing a recurrence of domestic violence and ensuring a period of separation of the persons involved'

7

upon 'reasonable proof of a past act or acts of abuse.' " ' [Citations.] Abuse includes . . . 'engag[ing] in any behavior that has been or could be enjoined' under section 6320. (§ 6203, subd. (a).) Behavior that may be enjoined under section 6320 relevant to this appeal includes 'disturbing the peace of the other party' (§ 6320, subd. (a)), which 'may be properly understood as conduct that destroys [another's] mental or emotional calm.' [Citation.] 'Thus, section 6320 provides that "the requisite abuse need not be actual infliction of physical injury or assault." ' " (*Curcio v. Pels* (2020) 47 Cal.App.5th 1, 11 (*Curcio*).)

In August 2021 when the trial court denied M.S.'s Petition, subdivision (c) of former section 6320[10] defined "disturbing the peace of the other party," as provided in subdivision (a) of this statute, in part to mean "conduct that, based on the totality of the circumstances, destroys the mental or emotional calm of the other party. This conduct may be committed directly or indirectly, including through the use of a third party, and by any method or through any means including, but not limited to, telephone, online accounts, text messages, internet-connected devices, or other electronic technologies. This conduct includes, but is not limited to, coercive control, which is a pattern of behavior that in purpose or effect unreasonably interferes with a person's free will and personal liberty." (Former § 6320, subd. (c).)

### b. Standards of Review

A trial court has broad discretion under the DVPA in determining whether to grant a petition for a restraining order. (*In re Marriage of Fregoso*

---

10     Section 6320, subdivision (c) was amended effective January 1, 2022 to include "reproductive coercion" as an additional "[e]xample of coercive control" for purposes of "disturbing the peace of the other party." (See Stats. 2021, ch. 135, § 1.)

*& Hernandez* (2016) 5 Cal.App.5th 698, 702.) This broad discretion is expressly provided by section 6320, which states that trial courts "may" issue restraining orders when the statutory criteria are met. (§ 6320, subd. (a); see *Krug v. Maschmeier* (2009) 172 Cal.App.4th 796, 802 ["The normal rule of statutory construction is that when the Legislature provides that a court . . . 'may' do an act, the statute is permissive, and grants discretion to the decision maker."].)

We review an appeal from an order denying a DVRO for abuse of discretion. (*Cueto v. Dozier* (2015) 241 Cal.App.4th 550, 560 (*Cueto*).) "[A]n abuse of discretion occurs where ' " 'the trial court exceeded the bounds of reason.' " ' " (*Ibid*.)

" 'In a case where the trier of fact has determined that the party with the burden of proof did not carry its burden and that party appeals, "it is misleading to characterize the failure-of-proof issue as whether substantial evidence supports the judgment [or order]." [Citations.] Instead, "where the issue on appeal turns on a failure of proof at trial, the question for a reviewing court becomes whether the evidence *compels a finding in favor of the appellant as a matter of law*." [Citation.] Specifically, we ask "whether the appellant's evidence was (1) 'uncontradicted and unimpeached' and (2) 'of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding.' " ' [Citation.] This is 'an onerous standard' [citation] and one that is 'almost impossible' for a losing [party] to meet, because unless the trier of fact made specific factual findings in favor of the losing [party], we presume the trier of fact concluded that '[the party's] evidence lacks sufficient weight and credibility to carry the burden of proof.' " (*Estes v. Eaton Corp.* (2020) 51 Cal.App.5th 636, 651 (*Estes*), citing *Ajaxo, Inc. v. E\*Trade Financial Corp.* (2020) 48 Cal.App.5th 129, 163–164

9

and *Bookout v. State of California ex rel. Dept. of Transportation* (2010) 186 Cal.App.4th 1478, 1486.)

Finally, the question of " 'whether a trial court applied the correct legal standard to an issue in exercising its discretion is a question of law [citation] requiring de novo review.' " (*Cueto, supra,* 241 Cal.App.4th at p. 560.)

### 2. *Analysis*

M.S. first contends the trial court used the wrong legal standard in finding he failed to meet his burden of proof for issuance of a DVRO. Specifically, he argues the court applied the "unknown legal standard [of] 'Destruction of [M.S.'s] Peace of Mind.' " We find this contention unavailing.

Although section 6320, subdivision (a) refers to "*disturbing* the peace of the other party" (§ 6320, subd. (a), italics added) and not "destruction" of the other party's "peace," we note subdivision (c) defines 'disturbing the peace of other party' to include conduct that, "based on the totality of the circumstances, *destroys* the mental or emotional calm of the other party" (*id.,* subd. (c), italics added). The trial court therefore did not apply an incorrect legal standard in evaluating whether T.W. was "disturbing" or "destroy[ing]" M.S.'s "peace" or "mental or emotional calm." (See *Cueto, supra,* 241 Cal.App.4th at p. 560.)

M.S. also contends that, even if the trial court applied the correct legal standard, its decision to deny issuance of a DVRO against T.W. was "unreasonable." (Italics omitted.) For M.S. to succeed on this ground, he must show that the circumstances, when viewed most favorably in support of the court's decision, are such that it acted in an "arbitrary, capricious, or patently absurd manner" and that a miscarriage of justice has resulted. (See *In re Carlos H.* (2016) 5 Cal.App.5th 861, 866; *Cueto, supra,* 241 Cal.App.4th at p. 560.)

We conclude the trial court did not abuse its discretion when it found the Petition was merely a "continuation of the ongoing custody dispute" between the parties. Although truncated, the record supports this finding. It clearly demonstrates that M.S. sought protection under the DVPA for himself and C. to prevent T.W. from further alienating the child from him and his family members, including daughter L. Moreover, M.S.'s appellate brief underscores the true nature of the dispute between the parties when he asks this court not only to reverse the order denying a permanent DVRO against T.W., but also to order that C. be placed in his physical custody and "returned to San Diego."

In addition, because M.S. bore the burden of proof in the trial court to show "abuse" under the DVPA, to succeed on appeal he now must make this showing as a matter of law. (See *Estes*, *supra*, 51 Cal.App.5th at p. 651.) Even crediting the limited "evidence" offered by M.S. in support of the instant appeal, we conclude he has not met this "onerous standard" (see *ibid*.), establishing that T.W. was "disturbing" or "destroy[ing]" his "peace" or "mental or emotional calm." (See § 6320, subds. (a), (c); *Cueto*, *supra*, 241 Cal.App.4th at p. 560.)

Finally, we note that many of the arguments in M.S.'s brief are an attempt to persuade this court of his need for a DVRO due to T.W.'s alleged "lies, false allegations, deceit and treachery" against him and family members he seeks to protect. However, these arguments demonstrate a fundamental misunderstanding of our role on appeal; we are not at liberty to reweigh the evidence and make new findings or those contrary to the fact-finder, if those findings are supported by sufficient record evidence. (See *Hasson v. Ford Motor Co.* (1977) 19 Cal.3d 530, 544 (*Hasson*) ["We do not reweigh the evidence on appeal, but rather determine whether, after resolving all conflicts

11

favorably to the prevailing party [citations], and according prevailing parties the benefit of all reasonable inferences [citation], there is substantial evidence to support the judgment [or order].”]; *Harris v. Stampolis* (2016) 248 Cal.App.4th 484, 498 (*Harris*) [an appellate court may neither reweigh the evidence nor the fact-finder's determination that a witness is not credible].)

In sum, we conclude the trial court did not exceed the bounds of reason when it denied M.S.'s Petition and found his request for a permanent DVRO against T.W. was merely a continuation of the child custody dispute between the parties. (See *Cueto, supra*, 241 Cal.App.4th at p. 560 [“ ‘ “ ‘When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court.’ ” ’ ”]; see also *Hasson, supra*, 19 Cal.3d at p. 544; *Harris, supra*, 248 Cal.App.4th at p. 498.)

**B.      The Trial Court Did Not Violate M.S.'s Due Process Rights**

M.S. also contends he was deprived of due process of law. However, he failed to brief this issue on appeal, and we conclude it is therefore forfeited. (See *Nwosu, supra*, 122 Cal.App.4th at p. 1246 [failure to present arguments with citation to legal authority can result in forfeiture of any contention that could have been raised on appeal]; *Sprague v. Equifax, Inc.* (1985) 166 Cal.App.3d 1012, 1050 [a brief should contain legal argument with citation to the authorities and if none is made, the court may treat the point as forfeited].) Reaching the merits in the interest of justice, we find this contention unavailing.

“ ‘The primary purpose of procedural due process is to provide affected parties with the right to be heard at a meaningful time and in a meaningful manner.’ ” (*Edward W. v. Lamkins* (2002) 99 Cal.App.4th 516, 532 (*Edward W.*); see *Anderson Nat'l Bank v. Luckett* (1944) 321 U.S. 233, 246 [“The

fundamental requirement of due process is an opportunity to be heard upon such notice and proceedings as are adequate to safeguard the right for which the constitutional protection is invoked."].)

M.S. initially claims his due process rights were violated when the trial court, at the August 11 hearing on his request for a permanent DVRO, did not give him "sufficient time to make his case and prove the actions of [T.W.] were not individual, isolated incidents but rather a complex litigation tactic to alienate [M.S. from C.], at any cost possible," "[e]ven if that included harming [M.S.'s] daughter, family, animals and/or . . . person."

After examining the record in this appeal, we conclude M.S. received the process he was due. The record shows M.S. was afforded a hearing on his request for a permanent DVRO; that the trial court admitted into evidence four exhibits proffered by M.S. and heard argument based on this evidence; and that, although the court ultimately ruled against him on the Petition, M.S. was not prevented from presenting his case in a "meaningful manner." (See *Edward W.*, *supra*, 99 Cal.App.4th at p. 532.) And merely because the court ruled against M.S. does not mean he was denied due process of law. Nothing more was required.

M.S. additionally claims he was denied due process because various trial judges in this case were biased against him. However, M.S.'s claim of judicial bias does not appear to include the judge who denied M.S. a DVRO (Hon. Victor A. Torres). We therefore reject this claim.

In any event, it does not appear that M.S. sought to disqualify Judge Torres for biasness. A party seeking disqualification of a judge must do so at the earliest practicable opportunity after discovery of the facts constituting the grounds for disqualification. (See *People v. Scott* (1997) 15 Cal.4th 1188, 1205–1207.) And, to the extent M.S., for the first time on appeal, is including

13

Judge Torres in his due process claim, we deem the issue forfeited. (See *People v. Guerra* (2006) 37 Cal.4th 1067, 1111 [noting a party who fails to raise a claim of judicial bias in the trial court has forfeited that argument on appeal].)

In addition, the mere fact that a trial judge issued rulings and made factual findings adverse to M.S. does not indicate an appearance of bias, let alone demonstrate actual bias. (See *Blakemore v. Superior Court* (2005) 129 Cal.App.4th 36, 59–60 ["While we conclude the court erred in several respects, the leap from erroneous rulings to the appearance of bias is one we decline to make."].)

Lastly, M.S. claims T.W. and her trial counsel also violated his due process rights. However, this claim fails as a matter of law because to assert such a violation requires that an individual establish a protected property interest that is adversely affected by "government action." (*Naidu v. Superior Court* (2018) 20 Cal.App.5th 300, 308.) Clearly, the conduct of T.W. and her trial counsel did not involve "government action."

## IV.  DISPOSITION

The trial court's August 11, 2021 order denying M.S.'s Petition is affirmed.

HUFFMAN, Acting P. J.

WE CONCUR:


DATO, J.


DO, J.