Filed 9/25/15; pub. order 10/20/15 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION 2

| | |
|---|---|
| ANNETTE S. CUETO,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>MICHAEL ANTHONY DOZIER,<br><br>        Defendant and Respondent. | A143084<br><br>(San Mateo County<br>Super. Ct. No. F0117511) |

**INTRODUCTION**

In 2012, appellant Annette Cueto obtained a two-year domestic violence prevention restraining order against the father of her son, respondent Michael Anthony Dozier.  Shortly before the order was set to expire, Cueto sought a permanent renewal of that order.  Following a hearing, the trial court denied Cueto's request, finding that she had not established an objectively reasonable fear of future abuse by Dozier.  We disagree, and reverse and remand for the trial court to determine whether the restraining order should be renewed for five years or permanently.[1]

**FACTUAL AND PROCEDURAL BACKGROUND**

A.    *The Initial Restraining Order*

On April 27, 2012, Cueto filed an ex parte request for a domestic violence restraining order, seeking to bar Dozier, the father of her son and former cohabitant of 11

---

[1] Respondent Michael Anthony Dozier did not file a brief in response to this appeal.

1

years, from contacting, abusing, or coming within 100 yards of her, the couple's son, or Cueto's mother as well as their homes, vehicles, schools, and workplaces.

In support of her request, Cueto alleged that two days earlier, Dozier had assaulted her in public after their eight-year-old son's baseball game. In her supporting declaration, Cueto stated that after the game, Dozier began yelling at his son causing the son to cry and shake. When Cueto attempted to intervene, Dozier told her to "Get out of my face bitch! Let me talk to my fucken [sic] son!" Dozier continued to yell at the son, so Cueto walked over, grabbed her son, and attempted to walk away. Dozier then grabbed her and "tried to punch [Cueto] (closed fist) with his right hand. [Cueto] quickly backed up so he managed to hit [her] nose." Dozier then grabbed her and threw her to the ground. Cueto stood back up and threatened to call the police, and in response Dozier again pushed her to the ground. Cueto then got up, and she and her son went to her car to leave. Cueto looked back and saw Dozier begin to choke her son's baseball coach.

Cueto also alleged that she had previously suffered abuse by Dozier over the years. She asserted that in May 2002, Dozier punched her in her left temple, knocking her out, following an argument after she claimed Dozier was cheating on her. She stated that similar events happened "a few more times" during their 11-year relationship. She also described two incidents in August 2010 and August 2011, after they had ended their relationship. In both incidents, Dozier allegedly became hostile after being told that their son did not want to play football and allegedly threatened to "kick [Cueto's] stupid ass."

Cueto concluded her declaration by referring to the April 25, 2012, incident: "I am very nervous and scared because they arrested him and let him go. I feel he wants revenge. My son has not been able to go to school. He's not sleeping well and keeps having nightmares. My son keeps telling me, 'mommy please don't make me see my dad again!' Respondent is very aggressive, abusive, verbally and physically. If he can do this in front of 10 children and their parents, what can he do privately? I'm afraid he will try to kill me. My son feels the same way."

On April 27, 2012, the trial court issued a temporary restraining order barring Dozier from harassing, attacking, striking, threatening, assaulting, hitting, following,

stalking, molesting, destroying the personal property of, disturbing the peace of, keeping under surveillance, blocking the movements of, contacting, or coming within 100 yards of Cueto, the couple's son, and Cueto's mother, as well as their home, vehicles, schools, or workplace.

On May 15, 2012, Dozier filed his response to Cueto's request for a domestic violence restraining order. He stated that on April 25, 2012, his son was upset after his baseball game, and Dozier had been talking with him to find out why he was upset. He alleged that while he was talking to his son, Cueto came up and began yelling at Dozier to stop upsetting their son in front of everybody and began calling Dozier a "nigger" and "faggot." He stated that Cueto began "pointing her hands in [Dozier's] face and tried to jab [his] eye with her keys in her right hand." Dozier stated he grabbed her hands to block her from hitting his face, and Cueto lost her balance and fell. Dozier denied ever abusing Cueto.

In reply, Cueto submitted a copy of the police report from the April 2012 incident. The police interviewed three witnesses to the altercation between Cueto and Dozier. These witnesses stated that Dozier and Cueto argued after a Little League baseball game and that during this argument, Dozier struck Cueto and pushed her to the ground twice. After Cueto left, the witnesses stated that Dozier placed his left hand on the baseball coach's neck for approximately one second while yelling at him. Dozier was arrested that evening for violating Penal Code section 243, subdivision (e)(1), battery on a former cohabitant.

On July 13, 2012, the trial court held a hearing, granted the request for a restraining order, and issued a two-year restraining order. Dozier did not attend the hearing, later claiming that he had mistaken the time for the hearing and arrived at the courthouse 5 hours later.

B.      *Cueto's Request to Renew the Restraining Order*

On April 23, 2014, Cueto filed a request to renew the restraining order permanently. In support of her request, Cueto stated: "After the court ordered the restraining order, I was afraid that I have angered the Respondent in requesting this order

3

and that he would come and hurt me.  I was afraid he might hire someone to get me.  I avoided places that I know he frequently goes to for fear of running into him."

In her declarations in support of her request to renew the restraining order request, Cueto claimed that Dozier had twice violated the restraining order by driving by her home.  Cueto stated: "Approximately a month after the court issued the restraining order, I heard loud music outside my house.  I looked through my window and I saw a 1991 white Lexus, the same car [Dozier] drove to pick up my son, driving on my street, playing loud music.  [Dozier] stopped at the corner of my block and then drove away.  When the car stopped, I could see [Dozier] inside.  When I saw him, I became afraid to leave my home, and I called the police.  The police told me that they could not do anything because he was no longer outside."  Cueto then stated: "A few months later, I saw a 1991 white Lexus driving by my house again.  I immediately felt scared, anxious, and threatened."

Cueto closed her declaration by stating: "I have been experiencing recurring nightmares about [Dozier] knocking on my door and hurting me if the Restraining Order expires.  In my nightmares, I see [Dozier] and try to use my cell phone to call for help, but I am unable to make the call fast enough.  I constantly worry about what [Dozier] may do if I am no longer protected by the Restraining Order."

Dozier opposed the request to renew the restraining order.  Dozier stated that he had been acquitted of criminal charges resulting from the April 25, 2012, incident.  He also stated that he never drove by Cueto's house after the restraining order was imposed. Dozier submitted a letter from Lisa Rios, who lives with Dozier and identified herself as Dozier's girlfriend and the mother of his young daughter.  Rios stated that she was the owner of a white Lexus, but that Cueto could not have seen Dozier drive by her house after the restraining order was filed.  Rios explained that her white Lexus did not have a stereo system or radio because it had been stolen before she bought the Lexus, and therefore it could not have been Dozier playing the "loud music" that Cueto claimed to have heard.  Rios also stated that the white Lexus was impounded for unpaid tickets one month after the restraining order was filed and had never been reclaimed.

C.     *Two Hearings on Cueto's Renewal Request*

The court held two separate hearings on Cueto's request to renew the restraining order. The first was held on June 25, 2014. Cueto was present and represented by counsel. Dozier was also present, representing himself. The court first addressed Cueto's claim that she saw Dozier drive by her house twice in the white Lexus after the restraining order had issued. Dozier denied driving by, and Rios reiterated that Cueto could not have seen her white Lexus. The trial court had the following exchange with Cueto and her counsel:

"THE COURT: . . . So, she saw a white Lexus and she thought it was his, correct?

"[CUETO'S COUNSEL]: Yes.

"THE COURT: But there is no proof of that. Did she see anybody driving?

"[CUETO'S COUNSEL]: Did you see anybody driving?

"MS. CUETO: Somebody was driving but I didn't see who it was.

"THE COURT: My point is there is a lot of white Lexus's out in the world. That's something that in and of itself, you know, is not out of the ordinary. . . .

"[CUETO'S COUNSEL]: Your Honor, we just like to reiterate that there is no necessity of the violation of the restraining order to grant the renewal. The question is only whether there is any genuine and reasonable fear . . . it is not necessary to have a violation of the underlying order.

"THE COURT: I know. I am trying to figure out whether it's reasonable. There is a lot of white Lexus's in the Bay Area, so—

"[CUETO'S COUNSEL]: I think the primary issue is whether it's reasonable, the violence underlying the initial restraining order and that restraining order found a history of violent abuse."

Dozier challenged the contention that there was a history of abuse in the relationship. The trial court acknowledged that defendant had been acquitted of the criminal charges resulting from the April 2012 incident, but noted that different standards applied to criminal and civil matters. The court then stated that the "issue really for the Court is whether or not it's a reasonable fear given the circumstances." Dozier again

5

disputed that there was any history of abuse, stating: "We never had physical altercations during our relationship, never. This was an attempt to continue to keep me from my son."

The trial court called a brief recess to review a copy of the Family Court Services report that included a summary of a mediator's interview with Cueto's and Dozier's son. When the court recalled the case, it read from the report: "The minor gave the incident report to counselor, the minor conveyed a sense of discomfort around the idea of spending time with the father especially since the incident after his baseball game last April. The minor gave the impression that the father got angry with him for not defending himself when a teammate threw a glove at him. [¶] The minor indicated that the mother told the father to stop and a physical altercation between them ensued. The minor says the father was calling him disparaging names. The minor is afraid of the father because of how aggressive he was with the mother and the minor's co[a]ch. He was recommended a 16 week anger management program."[2] The trial court asked Dozier if he completed the anger management program, and he replied that he did not remember the program being recommended.

Cueto then testified regarding her fear of Dozier occasioned by the upcoming expiration of the restraining order: "Because of the Court [hearing] coming up and the expiration coming up I have had a few bad dreams about this. I don't want to go places where he is going to be at where I thought he lived because I don't want to see him." This fear was a result of "the abuse from the past and what happened, and I am afraid that when this [restraining order] expires he is going to come to my house and start again." Cueto testified that there had been eight or nine separate acts of abuse during the course of their relationship, including an instance of Dozier sticking a gun in her mouth and threatening to kill her.

---

[2] In fact, the family law facilitator's recommendations, including the recommendation that Dozier attend anger management classes, were adopted as a court order in March 2013.

Dozier replied by denying there was any history of abuse, stating: "If there was a history of violence I am really hard pressed to know why the police weren't called over all these years and all this time." Regarding the April 2012 incident, he asserted that Cueto was the aggressor by following him and yelling derogatory names at him. He stated "And as far as some kind of incident with the co[a]ch, her or him never came to the court case to testify against me. If I am this bad person wouldn't you want to put me away? If you had the chance to come and testify? And a jury of 12 people that don't even know me found me innocent?" The court replied by stating: "Well, not guilty. There's a difference, it was not a factual finding." Cueto then explained that she had not appeared at the criminal trial because the district attorney had only given her 30 minutes notice that she was needed at the courthouse, and she could not make it in time because she had to pick up her son.

The trial court then took the case under submission. At a separate hearing on July 9, 2014, the trial court denied Cueto's request to renew the restraining order. The trial court stated: "[A]t the end of the day, it is the Court's determination that, at this point, there is just insufficient evidence to go forward with a permanent restraining order given that . . . there is a reasonable person standard that there would be any future threats of harm. I mean, I understand she feels anxiety when she thought that she saw him driving by. It was a white Lexus. As I said at the first hearing, there are many white Lexuses all over the Bay Area. That doesn't necessarily mean that it is Mr. Dozier or that a reasonable person would have the fear every time that they saw a Lexus driving down the street. That is not to say that Ms. Cueto could not file for another restraining order, and that doesn't give [Dozier] free rein to contact her, drive by her house, or anything of the sort." Then, addressing Dozier, the court stated: "So if there is anything that you do, either contacting her, or driving by her street, or ringing her door bell or anything like that, I am sure counsel will file for another restraining order request, and I will seriously consider granting that because at this point there is just insufficient facts to issue a permanent order; but that does not give you free license to contact her in any way." The

7

court then warned Dozier "if there is any contact, I will strongly consider another restraining order."

At the request of Cueto's counsel, the court issued a written statement of decision writing briefly that it denied the request "for the following reasons: (1) no testimony could be provided to the court that respondent was the person who drove by petitioner's home twice in the last two years in a white Lexus, (2) no testimony was provided to the court of any violations of the restraining order, (3) petitioner did not show a reasonable apprehension of fear, for physical or mental abuse, (4) [b]ased on the testimony and documents presented, and the facts showed that at two times within the last two years a white Lexus vehicle drove down petitioner's street, never being able to identify respondent as the person involved, the Court rules there is insufficient evidence at this time to renew the restraining order."

## DISCUSSION

Cueto argues that the trial court applied incorrect legal standards in assessing her request for a renewed restraining order. In the alternative, she contends that even if the trial court applied the correct standards, it abused its discretion in denying her renewal request. As we discuss below, the trial court applied the correct legal standards, but erred in concluding that the restraining order should not be renewed.

The Domestic Violence Prevention Act (DVPA) (Fam. Code, § 6200 et seq.)[3] exists "to prevent acts of domestic violence, abuse, and sexual abuse and to provide for a separation of the persons involved in the domestic violence for a period sufficient to enable these persons to seek a resolution of the causes of the violence." (§ 6220.) As provided in section 6345, subdivision (a), a domestic violence prevention restraining order "may be renewed upon the request of a party, either for five years or permanently, without a showing of any further abuse since the issuance of the original order, subject to termination or modification by further order of the court either on written stipulation filed

---

[3] All statutory references are to the Family Code.

8

with the court or on the motion of a party. The request for renewal may be brought at any time within the three months before the expiration of the orders."

Section 6345 does not provide a standard for a trial court to apply in deciding whether to grant a renewal request. In *Ritchie v. Konrad* (2004) 115 Cal.App.4th 1275, 1290 (*Ritchie*), the court engaged in an in depth analysis of what that standard should be, ultimately holding that "[a] trial court should renew the protective order, if, and only if, it finds by a preponderance of the evidence that the protected party entertains a 'reasonable apprehension' of future abuse." In *Lister v. Bowen* (2013) 215 Cal.App.4th 319, we summarized the *Ritchie* holding as follows:

"When contested, a request to renew a restraining order should not be granted pursuant to section 6345 simply because the requesting party has 'a subjective fear the party to be restrained will commit abusive acts in the future.' [Citation.] 'The "apprehension" those acts will occur must be "reasonable." That is, the court must find the probability of future abuse is sufficient that a reasonable woman (or man, if the protected party is a male) in the same circumstances would have a "reasonable apprehension" such abuse will occur unless the court issues a protective order.' [Citation.] However, an imminent and present danger of abuse is not required. [Citation.] In other words, under this objective test, '[a] trial court should renew the protective order, if, and only if, it finds by a preponderance of the evidence that the protected party entertains a "reasonable apprehension" of future abuse. . . . [T]his does not mean the court must find it is more likely than not future abuse will occur if the protective order is not renewed. It only means the evidence demonstrates it is more probable than not there is a sufficient risk of future abuse to find the protected party's apprehension is genuine and reasonable.' [Citation.]

"In evaluating whether the requesting party has a reasonable apprehension of future abuse, 'the existence of the initial order certainly is relevant and the underlying findings and facts supporting that order often will be enough in themselves to provide the necessary proof to satisfy that test.' [Citation.] 'Also potentially relevant are any significant changes in the circumstances surrounding the events justifying the initial

protective order. For instance, have the restrained and protected parties moved on with their lives so far that the opportunity and likelihood of future abuse has diminished to the degree they no longer support a renewal of the order?' [Citation.] Also relevant are the seriousness and degree of risk, such as whether it involves potential physical abuse, and the burdens the protective order imposes on the restrained person, such as interference with job opportunities. [Citation.]" (*Lister v. Bowen, supra,* 215 Cal.App.4th at pp. 332-333; accord *Eneaji v. Ubboe* (2014) 229 Cal.App.4th 1457, 1463.)

We review an appeal from an order denying a request to renew a domestic violence restraining order for abuse of discretion. (*Lister v. Bowen, supra,* 215 Cal.App.4th at p. 333; *Eneaji v. Ubboe, supra,* 229 Cal.App.4th at p. 1463.) As we explained in *Lister v. Bowen, supra,* 215 Cal.App.4th at page 333, an abuse of discretion occurs where " ' "the trial court exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court." ' " However, the question of "whether a trial court applied the correct legal standard to an issue in exercising its discretion is a question of law [citation] requiring de novo review." (*Eneaji v. Ubboe*, *supra*, 229 Cal.App.4th at p. 1463.)

Cueto argues that the trial court applied the incorrect legal standard on three grounds. First, Cueto contends that the trial court failed to properly assess the reasonableness of Cueto's fear of future abuse. As discussed above, the court in *Ritchie* stated that in determining whether a party protected by a restraining order has a reasonable fear of future abuse, the trial court should ask whether the "probability of future abuse is sufficient that a reasonable woman . . . *in the same circumstances* would have a 'reasonable apprehension' such abuse will occur unless the court issues a protective order." (*Ritchie*, *supra*, 115 Cal.App.4th at p. 1288, emphasis added.) Cueto argues that the trial court erred by applying a "reasonable person" standard, not the "reasonable woman in the same circumstances" standard. We are unpersuaded by this argument because the record does not support this conclusion. While the trial court referred to a "reasonable person" without including the phrase "in the same

10

circumstances" at the July 9 hearing, the record as a whole demonstrates the trial court understood and applied the correct legal standard. For example, at the earlier hearing, the trial court expressly stated that the "issue . . . for the Court is whether or not it's a reasonable fear given the circumstances." Absent any evidence to the contrary, we presume that the trial court applied the correct legal standard. (*Armando D. v. Superior Court* (1999) 71 Cal.App.4th 1011, 1025.)

Cueto next argues that the trial court erred as a matter of law by requiring her to prove that Dozier had violated the restraining order. The record does not support this argument, either. Section 6345 expressly provides that a restraining order may be renewed "without a showing of any further abuse since the issuance of the original order." (§ 6345, subd. (a).) In *Ritchie*, the court explained: "It would be anomalous to require the protected party to prove further abuse occurred in order to justify renewal of that original order. If this were the standard, the protected party would have to demonstrate the initial order had proved ineffectual in halting the restrained party's abusive conduct just to obtain an extension of that ineffectual order. Indeed the fact a protective order has proved effective is a good reason for seeking its renewal." (*Ritchie*, *supra*, 115 Cal.App.4th at p. 1284.) Thus, a trial court errs when it requires a party to show a violation of the restraining order as a condition to renewing that order. (See *Eneaji v. Ubboe*, *supra*, 229 Cal.App.4th at p. 1464 ["[T]he trial court's conclusion that the absence of further abuse in the three-year period was a sufficient basis for denying renewal is not supported by the law."].)

The trial court here, however, did not require Cueto to show that Dozier violated the restraining order. Read in its entirety, the trial court's reference to violations of the restraining order was in the context of addressing Cueto's affirmative claims that Dozier had violated the restraining order. In her renewal request, Cueto claimed that she feared for her safety in part because Dozier had allegedly twice violated the restraining order by driving by her house in a white Lexus. Because Cueto relied on these alleged violations of the restraining order to explain in part why she feared future abuse, the trial court

11

addressed this evidence in determining whether Cueto's fear was reasonable. There was no legal error.

Cueto next contends that the trial court erred by limiting its definition of abuse to only "physical or mental abuse." This misreads the record. Fairly read, this phrase from the trial court's statement of decision was its shorthand reference to the lengthy definition of abuse as defined in the DVPA. The DVPA defines "abuse" as including "any behavior that has been or could be enjoined pursuant to Section 6320." (§ 6203, subd. (a)(4).) Section 6320, in turn, permits a court to enjoin a party from, among other things, "molesting, attacking, striking, stalking, threatening, sexually assaulting, battering, . . . harassing, telephoning . . . , destroying personal property, contacting, either directly or indirectly, by mail or otherwise, coming within a specified distance of, or disturbing the peace of the other party." (§ 6320, subd. (a).) In *Eneaji v. Ubboe*, *supra*, 229 Cal.App.4th 1457, the court found that this definition "is not confined to physical abuse but specifies a multitude of behaviors which [do] not involve any physical injury or assaultive acts." (*Id.* at p. 1464.) Cueto argues that the DVPA's definition of abuse encompasses acts "beyond physical or mental abuse," and therefore the trial court's analysis was too narrow. There was no error here, and Cueto can point to no evidence that the trial court excluded from consideration because it did not fall within these very broad parameters.

Having determined that the trial court applied the correct legal standard, we nonetheless conclude that the trial court abused its discretion in finding that Cueto had not demonstrated a reasonable apprehension of future abuse. In denying Cueto's request for a restraining order, the trial court relied largely on the lack of any violation of the restraining order. On the facts of this case, however, that the initial restraining order "proved effective [was] a good reason for seeking its renewal." (*Ritchie*, *supra*, 115 Cal.App.4th at p. 1284.) Each factor articulated by the court in *Ritchie* supported renewal of the restraining order. First, Cueto obtained the initial restraining order after a violent incident at the baseball game in April 2012 and evidence of a troubling history of physical abuse, including being punched in the face in 2002, and threatened on two

occasions in 2010 and 2011.  As the *Ritchie* court recognized, the facts supporting the initial restraining order "often will be enough in themselves to provide the necessary proof to satisfy the test."  (*Ritchie*, *supra*, 115 Cal.App.4th at p. 1291.)  Second, there is nothing in the record to suggest that circumstances have changed and that Dozier had "moved on with [his] li[fe] so far that the opportunity and likelihood of future abuse has diminished."  (*Ritchie*, *supra*, 115 Cal.App.4th at p. 1291.)  To the contrary, it appears that Dozier failed to attend anger management classes that a court ordered as part of an order granting Dozier visitation with his son.

Further, we are troubled by the comments the trial court made to Dozier at the conclusion of the hearing after *denying* the application to renew the protective order, to the effect that Dozier did not have "free rein to contact" Cueto or to "drive by her house, or anything of the sort;" and that he did not have "free license to contact her in any way." The court continued that if there is "any contact," the court would "strongly consider another restraining order."  These comments suggest that the trial court believed there was a need to admonish Dozier from the bench that he must continue to stay away and have no contact with Cueto, but without giving Cueto the legal protection of a restraining order.  The trial court's comments bolster our conclusion that Cueto had demonstrated a reasonable apprehension of future abuse.

In sum, given the facts underlying the initial restraining order and the lack of changed circumstances, we conclude the trial court abused its discretion in denying the request to renew the order.

## DISPOSITION

The judgment is reversed and the matter is remanded with instructions that the trial court grant Cueto's request to renew the restraining order.  While Cueto requested that the trial court renew the restraining order permanently, before us she requested that we "direct the trial court to enter a renewed restraining order for either five (5) years or permanently."  On remand the trial court is instructed to determine in the first instance whether the restraining order should be renewed for five years or permanently.  (See

13

Fam. Code, § 6345, subd. (a) ["These orders may be renewed . . . either for five years or permanently[.]"])

_____

Miller, J.

We concur:

_____

Kline, P. J.

_____

Richman, J.

A143084, *Cueto v. Dozier*

Filed 10/20/15

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION 2

| | |
|---|---|
| ANNETTE S. CUETO, | |
|     Plaintiff and Appellant, | A143084 |
| v. | |
| MICHAEL ANTHONY DOZIER, | (San Mateo County |
|     Defendant and Respondent. | Super. Ct. No. F0117511) |

BY THE COURT:

The opinion in the above-entitled matter filed on September 25, 2015, was not certified for publication in the Official Reports. For good cause and pursuant to California Rules of Court, rule 8.1105, it now appears that the opinion should be published in the Official Reports, and it is so ordered.

Dated: _____      _____

                                                               Richman, Acting P.J.

Trial Court:  Superior Court of San Mateo

Trial Judge:  Hon. Stephanie Garratt


Attorneys for Plaintiff and Appellant        Cooley LLP
        Wendy J. Brenner
        Matthew D. Ezer
        Brett de Jarnette

        Family Violence Appellate Project
        Jennafer D. Wagner
        Nancy K.D. Lemon
        Shuray Ghorishi


No appearance for Defendant and Respondent