Filed 4/28/23 T.W. v. M.S. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| T.W., <br><br>     Plaintiff and Appellant, <br><br> v. <br><br> M.S., <br><br>     Defendant and Respondent. | D079984 <br><br><br> (Super. Ct. No. DN188889) |

APPEAL from an order of the Superior Court of San Diego County, Victor M. Torres, Judge. Reversed and remanded with instructions.

Family Violence Appellate Project, Cory Hernandez, Arati Vasan, Jennafer D. Wagner, Erin C. Smith; and Squire Patton Boggs, Nathaniel K. Fisher, for Plaintiff and Appellant.

M.S., in pro. per., for Defendant and Respondent.

In 2016, plaintiff/mother T.W. and defendant/father M.S. had a son, C. Shortly after C.'s birth, the parties engaged in extensive litigation that has now led to four separate appeals in this court.[1]

In this particular appeal, T.W. seeks reversal of the trial court's June 30, 2021 order denying her petition under the Domestic Violence Prevention Act (DVPA) (Fam. Code, § 6200 et seq.)[2] to renew the domestic violence restraining order (DVRO) against M.S. that initially issued on June 20, 2018. At the conclusion of the renewal hearing, the court denied T.W.'s request, finding that she had not established an objectively reasonable fear of future abuse by M.S. We conclude the court abused its discretion, reverse the June 30 order, and remand for the court to determine whether renewal of the DVRO, which shall exclude C. as a protected party, should be for five or more years or permanently. (§ 6345, subd. (a).)

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Overview and Issuance of a Temporary DVRO

T.W. and M.S. met in 2015, dated but never married. They had a child together, C., born in August 2016. In September 2016, T.W. filed a petition to establish parental relationship. Since September 2016, the parties "have been embroiled in a custody battle" over C.

In May 2018, T.W. filed a petition for a DVRO that included C. as a protected party. In her petition, T.W. requested sole legal and physical

---

[1]    See also D079500 (M.S.'s appeal from the June 4, 2021 judgment (Judgment)); D080174 (M.S.'s appeal from the order denying his request for a domestic violence restraining order against T.W.); and D080542 (T.W.'s appeal from the February 28, 2022 order reducing M.S.'s child support obligation).

[2]    All undesignated statutory references are to the Family Code.

custody of C. and M.S. have no visitation with their child. In support, T.W. stated that since this case began in September 2016, M.S. had "behaved in extremely bizarre ways" toward her and her attorney; that in May 2018 M.S. "dramatically stepped up his scary behavior sending numerous threats and disparaging remarks to both [her, her] attorney and his staff, and to a private investigator [she had] hired . . . to help gather information about [M.S.]"; and that as a result of M.S.'s conduct, T.W. feared for her safety and the safety of C. T.W. attached copies of the threatening emails sent by M.S. and portions of "several disturbing voicemails" he left at her attorney's office.[3] On May 31, 2018, the trial court granted T.W. a temporary DVRO against M.S.

## B. Issuance of the DVRO for a Three-year Term

On June 8, 2018, M.S. filed both a response to T.W.'s request for a more permanent DVRO and his own request for such an order against T.W. At the June 20 hearing, the trial court admitted the parties' declarations; and the exhibits/recordings of communications from M.S. to T.W., her attorney, and others in this case including the private investigator retained by T.W. Based on the evidence, T.W. argued M.S.'s conduct was "abusive," "threatening," "intimidating," and "disturb[ing] her peace."

---

[3] By way of example only, M.S. sent messages that read: "Ra ta bona . . . the end is here"; "Those who violate our democracy shall be punished"; "I will have you charged by the highest authorities on the planet"; "Click clock . . . the ticking of the tock . . . your life is about to get rocked"; and "Death is the easiest sentence in your future." (Boldface omitted.) M.S. also sent other messages including to T.W.'s counsel that provided, "when your wife begs me to FUCK her . . . I will pass her off to the stray dog next to me"; and, "I'm going to bet that your . . . wife and I will consent to having sex and I will fuck her on video and send it to you. . . . You get it motherfucker . . . you want to fuck with my family. . . ? [T]his is how I will fuck with you and your . . . family . . . you stupid mother fucker. [¶] [Y]our future with me is doomed."

During the hearing, M.S. cross-examined T.W. regarding her statements in support of the DVRO. M.S. also testified, telling the trial court it had been "manipulated by morally bankrupt and ethically destitute characters who continue to intentionally undermine the well[-]being, safety and security of [his] children"; that he has been denied access to C. "for more than half of [C.'s] life" because of the lies of T.W. and her attorney and their "repeated false allegations" against him; and that he was not the aggressor but instead was being oppressed by T.W.

The record shows M.S. then went through a supplemental declaration he filed in an attempt to show a pattern of abuse by T.W. against him, which included posts on social media by the private investigator she had hired who used an alias to contact the mother of M.S.'s daughter, L. M.S. argued he was entitled to a DVRO against T.W. because she and her attorney were using L. "as a weapon" in the custody dispute over C.; that the posts by the investigator led to the involvement of law enforcement from the Republic of Mozambique, where L.'s mother resides; and that as a result, local law enforcement conducted multiple child welfare inspections on L. at M.S.'s home in San Diego County. M.S. also argued the messages he sent to T.W. and/or her attorney were not threatening, and asked the court to deny her request for a more permanent DVRO.

After hearing additional argument from the parties, the trial court granted T.W.'s petition for a DVRO for a three-year term that included C., and denied M.S.'s petition seeking a reciprocal order against T.W. The court found M.S.'s conduct toward T.W. rose to the "level of disturbing [her] peace." It also found M.S.'s own evidence of abuse was more about "a concern with the process and [his] frustration with the process, [which] hasn't resulted in orders or rulings that [he] like[d]. Contacting the police department,

4

contacting Child Welfare Services, contacting the Carlsbad Police Department is not conduct that is domestic violence. [¶] It is avenues of recourse that are available to all parties if they have concerns of safety or welfare of children involved." The trial court also ordered that T.W. would continue to have sole legal and physical custody of C.; and that at least for the time being, there would be no visitation between M.S. and C.

**C.    Renewal Petition**

On June 10, 2021, T.W. filed a petition seeking a permanent DVRO against M.S. on the same terms as her initial petition (Renewal Petition). T.W. declared that a civil restraining order had also been issued against M.S. in March 2019, protecting T.W.'s attorney and his staff; and that, although M.S. had not directly communicated with T.W. since the initial DVRO issued, he had turned to the "court system as his outlet to continue his abuse, threats, and harassment [against her] via systemic meritless legal filings." As discussed in detail *post*, T.W. claimed that these filings "disturbed her peace," "destroy[ed her] mental and emotional calm," and caused her "substantial financial distress"; and that as a result of these filings, the trial court in February 2019 declared M.S. a vexatious litigant.

T.W. further declared that, without renewal of the DVRO, M.S.'s "abusive litigious behavior" would "surely escalate, especially in light of the lack of restraint he has demonstrated throughout the timeline of the initial restraining order."

T.W.'s renewal declaration included findings from the trial court's March 30, 2021, 24-page final statement of decision and ruling (SOD). The SOD resulted from a four-day trial in February 2021 and was incorporated into the Judgment, both of which are included in the record in the instant

5

appeal.[4] In the SOD, the court found both M.S. and T.W. lacked personal judgment during the course of this litigation; that as a result of their lack of judgment, C. "has been deprived of the right to have a safe and healthy relationship with M[.S.] and [C.'s half-]sister, L[.]"; that since C.'s birth, T.W.'s "actions indicate . . . she had limited intention[ ] of sharing C[.] with M[.S.] and certainly not on a 50/50 basis"; that M.S. had overcome the presumption under section 3044[5] in his own effort to obtain primary physical custody, or at a minimum, joint custody, of C.; and that, although M.S. "has not demonstrated civility in the court, he has filed pleadings, filed challenges to judges and made statements that were all within his right to do."

## D. Denial of Renewal Petition

The hearing on the Renewal Petition took place on June 30, 2021. T.W. argued that M.S.'s conduct after issuance of the initial DVRO demonstrated the need for a permanent DVRO in this case. Specifically, she argued that "[s]ince the [DVRO] was issued [in June 2018, M.S.] has directed his

---

[4] As noted *ante* in footnote 1, M.S. separately appealed the Judgment (D079500), in which the trial court granted T.W.'s request to move with C. to New York; ordered C. to remain in the primary physical custody of his mother and M.S. to resume visitation after a long no-contact period; and retained jurisdiction over these and other issues to "carry out the best interests of C[.]"

[5] Section 3044, subdivision (a) provides in relevant part: "Upon a finding by the court that a party seeking custody of a child has perpetrated domestic violence within the previous five years against the other party seeking custody of the child, . . . there is a rebuttable presumption that an award of sole or joint physical or legal custody of a child to a person who has perpetrated domestic violence is detrimental to the best interest of the child, pursuant to Sections 3011 and 3020. This presumption may only be rebutted by a preponderance of the evidence." Subdivision (b) of this statute addresses the findings and factors the court should consider in determining whether a person has overcome the presumption. (§ 3044, subd. (b).)

harassment and threats through litigation techniques instead of directly through e-mails, which [originally] led him to be deemed a vexatious litigant"; that M.S. had "displayed his anger and disdain toward [T.W.] in trial, in pleadings, and in every single hearing in between, of which there have been many"; and that she therefore had a "reasonable apprehension of future abuse" by him.

M.S. argued the trial court should deny the Renewal Petition based on the findings in the SOD, as summarized *ante.* M.S. further argued he has not communicated with T.W. "in any way, shape, or form" since the initial DVRO issued; that although he had been deemed a vexatious litigant, he has "followed the orders of the court" and "subscribed to [its] rulings"; that he had "no interest in any more friction or problems with [T.W.]," even agreeing to "extend the olive branch," which invitation T.W. rejected; and that, because the initial DVRO extended to C., the court in the SOD had revised the restraining order to allow M.S. visitation with C., and thus, if the DVRO reissued on the same terms and became permanent, it would interfere with his relationship with C., and the sibling relationship between L. and C.

T.W. disputed that M.S. had followed the trial court's orders, as he refused to take C. to therapy and/or pay for it, and had refused to pay sanctions or a "single dime" in child support. She noted that if M.S. felt "comfortable" violating the court's orders when a DVRO was in place, her apprehension was genuine and reasonable that his harassment would continue, if not escalate, in the absence of such an order.

The trial court stated it had read the SOD and the other documents submitted by the parties in connection with the Renewal Petition, including T.W.'s original DVRO petition. The court found the legal test it must apply was whether T.W. established a "reasonable apprehension of future abuse"

7

and whether "that apprehension is genuine and reasonable." Under the facts of this case, the court found T.W. had not satisfied her burden.

The court explained, "I understand why [T.W.] filed this originally. But I do find that [M.S.] hasn't violated the restraining order, or at least it hasn't been found that he's violated the restraining order. I don't see any practical reason, from the court's perspective, why another five-year restraining order wouldn't protect both [M.S.], the children, and [T.W.]; however, that's not the standard that the court has to find. The standard . . . is that there is reasonable apprehension of future abuse, that that apprehension is genuine and reasonable. And under these facts, I'm not going to find that it is."

The trial court continued, "Now, having said that, I'm just going to remind [M.S.], if they have proof of your continued harassment, then they are going to be able to file another restraining order, which would then restrain you for possibly up to another five years"; and added, "[M]y personal belief would be that putting another five-year extension on [the DVRO] would probably protect both of you from false accusations, from continued harassment, from a lot of things. But the court has chosen to make an order [in the SOD and resulting Judgment] that includes visitation for [M.S.] That's a carve-out of the restraining order that was previously issued." Based on these facts, the court found that T.W.'s apprehension of future abuse was not objectively "reasonable and genuine."

## II. DISCUSSION

T.W. claims that the trial court applied an incorrect legal standard in assessing her Renewal Petition. In the alternative, she claims that even if the court applied a correct standard, it abused its discretion in denying her renewal request. As we discuss, we conclude the court applied the correct

8

legal standard, but erred in finding under the facts of this case that the initial DVRO should not be renewed.

## A.    Renewal of a DVRO

Section 6345 governs renewal of a DVRO.  Subdivision (a) of this statute provides for renewal of a restraining order "[i]n the discretion of the court, . . . upon the request of a party, either for five or more years, or permanently, at the discretion of the court, without a showing of further abuse since the issuance of the original order subject to termination or modification by further order of the court either on written stipulation filed with the court or on the motion of a party."  (§ 6345, subd. (a).)

In a contested DRVO renewal hearing such as in the instant case, a "trial court should renew the protective order, if, and only if, it finds by a preponderance of the evidence that the protected party entertains a 'reasonable apprehension' of future abuse. . . .  [T]his does not mean the court must find it is more likely than not future abuse will occur if the protective order is not renewed.  It only means the evidence demonstrates it is more probable than not there is a sufficient risk of future abuse to find the protected party's apprehension is genuine and reasonable."  (*Ritchie v. Konrad* (2004) 115 Cal.App.4th 1275, 1290 (*Ritchie*); accord *In re Marriage of Martindale & Ochoa* (2018) 30 Cal.App.5th 54, 59 (*Martindale*).)

*Ritchie* explained this standard sets an objective test for renewal of a DVRO:  "It is not enough [the requesting] party entertain[s] a subjective fear the party to be restrained will commit abusive acts in the future.  The 'apprehension' those acts will occur must be 'reasonable.'  That is, the court must find the probability of future abuse is sufficient that a reasonable woman (or man, if the protected party is a male) in the same circumstances would have a 'reasonable apprehension' such abuse will occur unless the

9

court issues a protective order." (*Ritchie, supra,* 115 Cal.App.4th at p. 1288; accord, *Cueto v. Dozier* (2015) 241 Cal.App.4th 550, 561 (*Cueto*).)

In satisfying this objective standard, *Ritchie* noted it was "unnecessary for the protected party to introduce or the court to consider actual acts of abuse the restrained party committed after the original order went into effect. It would be anomalous to require the protected party to prove further abuse occurred in order to justify renewal of that original order. If this were the standard, the protected party would have to demonstrate the initial order had proved ineffectual in halting the restrained party's abusive conduct just to obtain an extension of that ineffectual order. Indeed the fact a protective order has proved effective is a good reason for seeking its renewal." (*Ritchie, supra,* 115 Cal.App.4th at p. 1284; *Martindale, supra,* 30 Cal.App.5th at p. 59 [a trial court should consider the existence of the initial restraining order and the underlying findings and facts supporting that order, which " ' "often will be enough in themselves to provide the necessary proof to satisfy that test" ' "].)

Nonetheless, *Ritchie* found whether the original DVRO had been violated was a factor to consider on renewal. Other factors included (1) the conduct underlying the original restraining order; (2) any changed circumstances since the initial order; and (3) in cases such as the instant one without physical violence, the burdens imposed on the restrained party by continuing the order. (*Ritchie, supra,* 115 Cal.App.4th at pp. 1290–1292.)

## B.    Standards of Review

"We review an appeal from an order denying a request to renew a domestic violence restraining order for abuse of discretion. [Citations.] [A]n abuse of discretion occurs where ' " 'the trial court exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the

10

facts, the reviewing court has no authority to substitute its decision for that of the trial court.' " ' " (*Cueto, supra*, 241 Cal.App.4th at p. 560; accord, *Martindale, supra*, 30 Cal.App.5th at p. 59.)

However, because every exercise of discretion must be guided by applicable legal principles, which are derived from the statute under which discretion is conferred, " 'a discretionary order based on an application of improper criteria or incorrect legal assumptions is not an exercise of informed discretion and is subject to reversal.' " (*Eneaji v. Ubboe* (2014) 229 Cal.App.4th 1457, 1463 (*Eneaji*).) Whether the trial court applied the correct legal standard in exercising its discretion to decide the underlying issue is a question of law subject to de novo review. (*Ibid.*)

## C.     Analysis

Based on *Ritchie* and its progeny, we conclude the trial court applied the correct legal standard in assessing the Renewal Petition. (See *Cueto, supra*, 241 Cal.App.4th at p. 561; *Ritchie, supra*, 115 Cal.App.4th at p. 1290.) Indeed, the record shows after hearing the evidence and the argument of the parties, the court correctly articulated the test governing renewal, namely, whether T.W. established a "reasonable apprehension of future abuse" and whether "that apprehension is genuine and reasonable." We thus reject T.W.'s claim the court applied an incorrect legal standard in denying her Renewal Petition. Nonetheless, we agree with T.W. that, based on the facts of this case, the court abused its discretion in finding she had not demonstrated a reasonable apprehension of future abuse to warrant renewal of the DVRO.

In her declaration in support of her Renewal Petition, T.W. addressed what she claimed was M.S.'s continued abuse and hostility against her through his misuse of the "court system." Just eight days after the initial

11

DVRO issued, M.S. sought to revoke that order, which the trial court denied. T.W. detailed what she described as other, meritless court filings by M.S. to harass her and destroy her "mental and emotional calm." These included five ex parte requests, 11 requests for order, a request to hold her in contempt, and his own request for a DVRO against her, which is the subject of a related appeal. (See footnote 1, *ante*.) And in many instances when the trial court denied relief, M.S. sought reconsideration of those orders. As a result of M.S.'s repeated meritless filings, he was declared a vexatious litigant in June 2019, only six months after the initial DVRO had issued.

M.S.'s harassment of T.W. also included his violation of numerous court orders, as alleged by T.W., including failing to pay child support, sanctions, and "half of [C.'s] therapy . . . totaling more than $30,000." M.S. has also repeatedly sought to obtain sole legal and physical custody of C., despite the trial court's finding in the SOD and Judgment that T.W. would have sole legal custody and primary physical custody of C.; and has also repeatedly asked the court to order her to pay him sanctions of "tens of thousands of dollars" and award him attorney fees, even though he is self-represented. T.W. claims she has expended "tens of thousands of dollars" defending M.S.'s meritless claims and filings, causing her "substantial financial distress," which has further destroyed her mental and emotional calm.

T.W. also alleged M.S. has continued to harass her attorney, despite the existence of the March 2019 civil restraining order protecting him and his staff, which in turn has caused T.W. to suffer additional emotional distress. Specifically, during the February 2021 trial, M.S. yelled "you're a criminal" to T.W.'s attorney and then lunged at him, requiring "bailiff intervention." M.S. also has repeatedly referred to T.W. and her attorney as "criminals" both in filings and in open court; has claimed in "nearly every pleading" that he

12

intends to bring "child trafficking charges" against her and her attorney; and has accused T.W. of being "mentally ill and abusive toward [C.]," and C. of being "racist, insecure, and a 'prisoner' " as a result of T.W.'s parenting of the child.  M.S. has also refused to call C. by his name, instead referring to him as "Baba," which has caused both C. and T.W. emotional distress.  These allegations show that T.W.'s apprehension of future abuse by M.S. was genuine and reasonable.

These same allegations also show that M.S. has not "moved on" with his life since issuance of the initial DVRO.  (See *Cueto, supra*, 241 Cal.App.4th at p. 562; *Ritchie, supra,* 115 Cal.App.4th at p. 1291.)  That is, while the methods M.S. used to abuse T.W. have changed since issuance of the initial DVRO—from sending threatening emails to what T.W. describes as his "systemic meritless legal filings"—his aggressive and abusive behavior toward her has remained unchanged.

Our conclusion that the *Ritchie* factors warrant issuance of a renewed DVRO in this case is further supported by the trial court's comments during the renewal hearing.  The court admonished M.S. that if T.W. came forward with "proof of [his] *continued* harassment, then [she is] going to be able to file another restraining order, which would then restrain you for possibly up to another five years."  (Italics added.)  When M.S. stated he understood, the court responded "Hold on," then added its "personal" view that renewing the DVRO for another five years would protect "both of you from false accusations, from *continued* harassment, from *a lot* of things."  (Italics added.)

These comments are not unlike the statements made by the trial court in *Cueto* that the Court of Appeal there found "troubl[ing]."  (*Cueto, supra,* 241 Cal.App.4th at p. 562.)  After denying the petitioner's renewal of a

DVRO, the trial court in *Cueto* admonished the restrained party that he "did not have 'free rein to contact' [the petitioner] or to 'drive by her house, or anything of the sort' " (*ibid.*); and that, if the restrained party contacted the petitioner, "the court would 'strongly consider another restraining order' " (*ibid.*). *Cueto* concluded the statements by the trial court suggested it believed there was a sufficient possibility of future contact by the restrained party to warrant admonishment, "but without giving [the petitioner] the legal protection of a restraining order." (*Ibid.*) Likewise, we too are concerned by the comments of the trial court in the instant case, which suggest it also believed that T.W.'s apprehension of "continued" future abuse by M.S. was genuine and reasonable.

In conclusion, the allegations in support of T.W.'s Renewal Petition show M.S. continued to harass T.W. after the court issued the initial DVRO, albeit in ways not technically a violation of that order, but demonstrating he has not "moved on" since its issuance. As such, and based on the facts supporting the initial restraining order, which the *Ritchie* court recognized "often will be enough in themselves to provide the necessary proof to satisfy the test" for renewal (see *Ritchie, supra,* 115 Cal.App.4th at p. 1291), we conclude on the facts of this case that the trial court abused its discretion in denying T.W.'s Petition.[6]

---

[6] In light of our decision, we decline to address T.W.'s alternative argument that the trial court erred in allegedly finding that M.S.'s "post-DVRO financial and legal abuse" was not "abuse" under section 6203.

### III.  DISPOSITION

The June 30, 2021 order denying T.W.'s Renewal Petition is reversed and the matter is remanded with instructions that the trial court grant her request to renew the restraining order, excluding C. as a protected party.  On remand, the court is directed to determine in the first instance whether the restraining order should be renewed for five or more years or permanently, which is the relief sought by T.W. on appeal.  The parties to bear their own costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(5).)


HUFFMAN, Acting P. J.

WE CONCUR:



DATO, J.



DO, J.

15