Filed 4/6/26  Gonzalez v. Juarez CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| JUAN CARLOS GONZALEZ, | B346174 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. |
| v. | No. 24STRO02139) |
| AMY JUAREZ, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of
Los Angeles County, Latrice A.G. Byrdsong, Judge.  Affirmed.
Amy Juarez, in pro. per., for Defendant and Appellant.
No appearance for Plaintiff and Respondent.

———————————————

Defendant and appellant Amy Juarez appeals the trial court's April 14, 2025 order under Family Code section 6345, subdivision (a),[1] renewing, for a period of five years, a one-year domestic violence restraining order (DVRO) protecting plaintiff and respondent Juan Carlos Gonzalez. Juarez contends the trial court erred in believing what Juarez claims were Gonzalez's false allegations against her. We affirm.

## FACTS AND PROCEDURAL BACKGROUND

### A.    *Background and Overview*

Gonzalez and Juarez previously worked together and for some time were engaged in a dating or sexual relationship, which ended sometime before October 2023.[2] In April 2024, the trial court entered a one-year DVRO protecting Gonzalez and his relatives from Juarez. Juarez appealed, and this court affirmed. (*Juarez v. Gonzalez* (Nov. 7, 2025, B343323) [nonpub. opn.].) While Juarez's appeal of the April 2024 DVRO was pending, Gonzalez requested a renewal of the DVRO. After a contested hearing, the trial court renewed Gonzalez's DVRO for a period of five years. Juarez now appeals that renewal order.

---

[1] All further statutory references are to the Family Code unless otherwise stated.

[2] Portions of our recitation of facts and procedure are taken from our prior opinion in *Juarez v. Gonzalez* (Nov. 7, 2025, B343323) [nonpub. opn.]) and the underlying record on appeal. (Evid. Code, § 452, subd. (d).)

## B.    *Initial DVRO*

On March 26, 2024, plaintiff Gonzalez filed a request for a domestic violence restraining order (DVRO), accusing Juarez of stalking him, disturbing his peace, and vandalizing his car.  On March 28, 2024, Juarez filed her own request for a DVRO, accusing Gonzalez of physically abusing her in April 2023, harassing her in August 2023, and attacking her and her brother in March 2024.[3]  After a hearing on April 17, 2024, to consider both DVRO requests, the trial court granted Gonzalez's DVRO request for a period of one year, expiring April 17, 2025.  The court denied Juarez's DVRO request.

Juarez appealed the DVRO against her.  In the fall of 2025, this court invited the parties to address the status of the appealed order and explain why we should not dismiss the appeal as moot.  Juarez filed a response asking us to reach the merits of her appeal because the DVRO caused her mental stress and financial hardship; she also alluded to a new court case for a five-year extension.  Ultimately, this court addressed the merits of the appeal, and we affirmed the April 2024 DVRO.  (*Juarez v. Gonzalez* (Nov. 7, 2025, B343323) [nonpub. opn.].)

---

[3] Nowhere in her appellate briefing did Juarez contend the court erred in denying her DVRO request.

**C.** *DVRO Renewal*

### 1. Request for Renewal

On March 21, 2025, Gonzalez filed a request to renew the April 17, 2024 one-year restraining order for a period of five years. Gonzalez wrote in his request that he sought the renewal because he was afraid or worried Juarez might abuse him in the future based on two incidents, on June 4 and June 11, 2024. Gonzalez characterized both incidents as violations of the restraining order. Gonzalez's written narrative in support of his renewal request stated that the officer who arrested Juarez on June 11, 2024 told him that "they found weapons like a taser, pepper spray, and a knife past the legal length in her possession." Attached to the request were copies of the prior DVRO and police reports for June 4 and June 11, 2024.

### 2. June 4, 2024 Encounter

In the very early morning of June 4, 2024, Gonzalez was sleeping in his parked car near his workplace in the City of Alhambra, before his work shift was due to start at 2:00 a.m. He saw a car parked behind him that he believed belonged to Juarez, and he took photos of the car before it drove away. He later saw the same car drive past him and past the police station. He reported to the police that Juarez was violating the restraining order, but by then the car had left the area. An officer told Gonzalez that if he saw Juarez's car again, he should not approach the car, but instead report its location to the police.

### 3. June 11, 2024 Arrest

Around 1:30 a.m. on June 11, 2024, Gonzalez saw Juarez's car parked about two blocks away from his workplace. Gonzalez called the police and reported he had a restraining order against Juarez, and she was parked near his workplace. Gonzalez provided police with the location and a description of Juarez's car. When police located her car, Juarez was driving. Police conducted a traffic stop and questioned Juarez about her presence in Alhambra. She explained she had gotten off work and had stopped to talk to a friend on the phone. Juarez confirmed to the officer that she was aware of the restraining order and she knew Gonzalez was scheduled to start work, but denied coming to Alhambra to look for Gonzalez. After the officer confirmed the restraining order with dispatch, he called Gonzalez, who advised the officer that Juarez being in Alhambra when he starts work has been an ongoing issue, and that seeing Juarez's car disturbs his peace. Gonzalez stated he was worried that Juarez would follow him and possibly vandalize his car, because she previously vandalized his car when it was parked at his home. Based on his investigation, the officer determined that Juarez had violated the restraining order by driving and parking near Gonzalez's workplace and disturbing Gonzalez's peace and emotional calm. Juarez was arrested and booked for violation of Penal Code section 166(a)(4) [willful disobedience of a court order], and her car was towed. Ultimately, the district attorney chose not to pursue the charges against her.

4.    <u>Renewal Hearing</u>

On April 14, 2025, the trial court conducted a hearing on the renewal request.[4]  After a brief discussion about what additional evidence the parties had beyond the renewal request, the court first heard testimony from Gonzalez about the two incidents on June 4 and 11, 2024.  Gonzalez also explained to the court that he was seeking the renewal because he feared that once the current order expired Juarez would resume harassing him, affecting his work and making him fear for his life, his mental and physical health, and his finances, based on her vandalizing his vehicle.

The court asked Juarez about her presence near Gonzalez's work on the two dates at issue.  Juarez denied being near Gonzalez's workplace on June 4, 2024, explaining that she had seen other vehicles like hers in Alhambra, and she was not there.  Regarding the incident on June 11, 2024, Juarez explained that she got out of work in El Monte at 1 a.m., and she sometimes stops in Alhambra to go to her gym (Planet Fitness) or to the 7-Eleven store there.  Juarez had parked on the street, one block from the 7-Eleven, and was talking on the phone with a friend when she noticed a strange car near her own for a long time.  Juarez couldn't see the license plate, and then the other car drove off as she was walking back to her own car.  She thought Gonzalez might have done something to her car, but it looked

---

[4] Responding to questioning from the trial court, Gonzalez admitted he had forgotten to have the sheriff serve Juarez with his renewal request.  Juarez was present at the hearing and waived the defective service.

6

fine.  When she started driving, she noticed she was being followed very closely by a vehicle that turned out to be the police, who pulled her over and started questioning her.  Juarez explained—to the court and to the police—that she was not there to see Gonzalez, but that she frequents the 7-Eleven and the gym nearby.

During her testimony, Juarez also claimed that Gonzalez chose her birthday to "do this to me," meaning Juarez believed Gonzalez was tracking her car and sought to have police detain her on her birthday.  When the judge asked Gonzalez to clarify whether he was already there or saw Juarez's car that morning after it was parked, Gonzalez said he saw her car when he was driving to work, but also explained that he was paranoid because his car had been vandalized in the nighttime, implying that Juarez and her brother were carrying out the vandalism.  Juarez responded that she works from 4:30 until 1 a.m. in the morning, and she had the shift times to prove it.  She denied vandalizing Gonzalez's car, and started referring to her efforts to present evidence on that issue during the original DVRO hearing in April 2024.  The court responded that it was not going to relitigate the facts and circumstances of the prior DVRO.  The court clarified that for the current hearing, Juarez had not presented any request for a restraining order against Gonzalez or any of his family members, so it would be "evaluating the information to determine whether or not [Gonzalez] has good cause to request this renewal based on his reasonable belief that there's still a need for the restraining order.  And to be clear, [Gonzalez] does not need to prove any future abuse or that acts have actually occurred but that [he has] a reasonable apprehension of future abuse."

The court asked about a police document Juarez had identified earlier, and upon reviewing the document, the court described it as indicating that the district attorney chose not to file an accusatory pleading within 25 days of Juarez's arrest, but that the letter did not preclude further investigation or a subsequent filing.[5]  Juarez noted that where she parked was a half-mile from Gonzalez's workplace.  Juarez also clarified to the court that her testimony and photos of Gonzalez's family members was being offered not to ask for a restraining order against him, but to clarify that it didn't make sense for Gonzalez to be claiming Juarez was harassing him, when he was sending his family members to harass her and her family.  Finally Juarez pointed out that while Gonzalez claimed in his request that Juarez had weapons in her vehicle, the police report did not include any such information.

The court gave Gonzalez an opportunity to respond, and he emphasized that since Juarez worked in El Monte, there was no plausible reason why she needed to go to a 7-Eleven in Alhambra so close to his work.  He also pointed out that because his job is parking enforcement, his work could require him to be anywhere in Alhambra between 2 a.m. and 4 a.m.  He noted that Juarez did not need to exit the freeway to make a phone call, and said he had a map showing the relative distances between the freeway, the police station, the 7-Eleven, and the Planet Fitness.  He also stated that the security guard for the parking lot near the Planet Fitness calls the police station to tow away vehicles that are

[5] On March 26, 2026, Juarez filed in this court a motion to augment, seeking to add to the appellate record this document and several others that were not included in the clerk's transcript.  The motion is denied.

parked overnight, noting that he responds to that area frequently.

The trial court found Gonzalez's testimony to be credible, and that he had proven by a preponderance of the evidence that he "entertains a reasonable apprehension of future abuse," noting the police report that the June 11, 2024, incident disturbed Gonzalez's emotional well-being and therefore violated the existing restraining order. The court stated it did not find Juarez's reasons for being in the area to be credible, and did not believe Juarez's testimony about the June 4, 2024, incident.

5. Renewal Order and Appeal

The court granted the renewal request, and Juarez filed a timely appeal.

**DISCUSSION**

Gonzalez has not filed a respondent's brief on appeal, but Juarez still bears the burden to show reversible error. (*Jameson v. Desta* (2018) 5 Cal.5th 594, 609 [appellant must demonstrate error justifying reversal].)

## A. *Restraining Order Renewals*

Family Code section 6345, subdivision (a) authorizes a court to extend the term of an existing DVRO "upon the request of a party, either for five or more years, or permanently, at the discretion of the court, without a showing of further abuse since

9

the issuance of the original order."[6]  (*Navarro v. Cervera* (2025) 108 Cal.App.5th 229, 237 (*Navarro*); *G.G. v. G.S.* (2024) 102 Cal.App.5th 413, 421.)

"The legal standard for renewal of a DVRO is whether the protected party entertains a reasonable apprehension of future abuse.  (*Ritchie v. Konrad* (2004) 115 Cal.App.4th 1275, 1290 (*Ritchie*).)  '[T]his does not mean the court must find it is more likely than not that abuse will occur if the protective order is not renewed.  It only means the evidence demonstrates it is more probable than not there is a sufficient risk of future abuse to find the protected party's apprehension genuine and reasonable.'  (*Ibid.*)  An imminent and present danger of abuse is not required; there must only be a reasonable apprehension that 'abuse will occur at some time in the future if the protective order is allowed

---

[6] The full text of the subdivision provides:  "(a) In the discretion of the court, the personal conduct, stay-away, and residence exclusion orders contained in a court order issued after notice and a hearing under this article may have a duration of not more than five years, subject to termination or modification by further order of the court either on written stipulation filed with the court or on the motion of a party.  These orders may be renewed, upon the request of a party, either for five or more years, or permanently, at the discretion of the court, without a showing of further abuse since the issuance of the original order.  Renewals and subsequent renewals shall be subject to termination, modification, or subsequent renewal by further order of the court either on written stipulation filed with the court or on the motion of a party.  The request for renewal may be brought at any time within the three months before the expiration of the orders."  (§ 6345, subd. (a).)

10

to expire.' (*Id.* at p. 1288.)" (*Michael M. v. Robin J.* (2023) 92 Cal.App.5th 170, 179 (*Michael M.*).)

A court ruling on a renewal request considers three factors to assess whether the requesting party has a reasonable apprehension of future abuse: (1) "the evidence and findings on which the initial DVRO was based" (*Michael M., supra*, 92 Cal.App.5th at p. 180; *Ritchie, supra*, 115 Cal.App.4th at p. 1290); (2) changes in the circumstances surrounding the events justifying the initial DVRO (*Michael M.,* at p. 180; *Ritchie*, at p. 1291); and (3) " 'the seriousness and degree of risk, such as whether it involves potential physical abuse, and the burdens the protective order imposes on the restrained person, such as interference with job opportunities' " (*Michael M.,* at p. 180; *Ritchie*, at p. 1291).

"[S]ection 6345 makes it unnecessary for the protected party to introduce or the court to consider actual acts of abuse the restrained party committed after the original order went into effect. It would be anomalous to require the protected party to prove further abuse occurred in order to justify renewal of that original order. If this were the standard, the protected party would have to demonstrate the initial order had proved ineffectual in halting the restrained party's abusive conduct just to obtain an extension of that ineffectual order." (*Ritchie, supra*, 115 Cal.App.4th at p. 1284; accord *In re Marriage of Brubaker & Strum* (2021) 73 Cal.App.5th 525, 536.)

"In challenging a renewal order, the restrained party is not permitted 'to challenge the truth of the evidence and findings underlying the initial order.' " (*Lister v. Bowen* (2013) 215 Cal.App.4th 319, 333; see also *Ritchie, supra*, 115 Cal.App.4th at p. 1290.)

11

**B.** *Standard Of Review*

A trial court's order granting or denying a request for renewal of a DVRO is reviewed for abuse of discretion. (*Navarro, supra*, 108 Cal.App.5th at p. 238.) If it is necessary to review factual findings, we refrain from reweighing evidence and consider whether the findings are supported by substantial evidence. (*In re Harris* (2024) 16 Cal.5th 292, 319 [reviewing court prohibited from reweighing facts in assessing whether substantial evidence exists]; *Navarro*, at p. 238 [factual findings in DVRO renewal reviewed for substantial evidence]; *M.S. v. A.S.* (2022) 76 Cal.App.5th 1139, 1145 [reviewing court declines to reweigh evidence in determining propriety of DVRO].)

" 'A court abuses its discretion if it acts "in an arbitrary, capricious, or patently absurd manner" ' [citation] or 'when its ruling "falls outside the bounds of reason" ' [citation]." (*People v. Thomas* (2023) 14 Cal.5th 327, 399.) The California Supreme Court has emphasized: " ' "The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court." ' [Citations.]" (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318–319.) Nevertheless, "[i]f the court's decision to deny a renewal request is influenced by an erroneous understanding of the law, the court has not properly exercised its discretion under the law. [Citation.]" (*Michael M., supra*, 92 Cal.App.5th at p. 178.)

## C.  *Analysis*

Juarez contends on appeal that the trial court incorrectly rejected the following arguments she presented during the hearing:  (1) Gonzalez's factual assertions regarding the incidents on June 4 and 11, 2024, were fabricated; (2) because she had an alternate reason for being in the vicinity of Gonzalez's workplace and denied purposely coming within 100 yards of Gonzalez, she did not violate the initial DVRO; and (3) Gonzalez's claimed fear of further abuse was belied by her evidence that his younger siblings had vandalized her car and home.  Juarez also challenges the court's credibility determination, accusing the court of bias.

None of Juarez's arguments demonstrate that the trial court abused its discretion when it determined that Gonzalez had a reasonable apprehension of future abuse.  Juarez's argument that Gonzalez's statements of fear were either fabricated or unreasonable are simply irrelevant to whether the court committed legal error in granting the renewal.  Keeping in mind that Gonzalez did not need to show a violation of the prior DVRO in order to show reasonable apprehension of future abuse (*Michael M., supra*, 92 Cal.App.5th at p. 179), it bears emphasizing that the court did find such a violation, based upon the totality of the evidence and the relative credibility of Gonzalez and Juarez's testimony.  Juarez's arguments boil down to dissatisfaction with the trial court's credibility determination, a determination that we have no occasion to second-guess. (See *Curcio v. Pels* (2020) 47 Cal.App.5th 1, 12 [a reviewing court "must accept as true all evidence supporting the trial court's findings" and will "not determine credibility or reweigh the

evidence"].)  Finally, Juarez's claims that the court was biased against her reflect nothing beyond Juarez's dissatisfaction with the court's credibility determinations and findings of fact; we have reviewed the transcript of the hearing and conclude Juarez's claims of trial court bias are unfounded.

The court had before it the two police reports attached to Gonzalez's renewal request.  The police reports corroborated his testimony about seeing Juarez's car parked near his workplace close to the time he would be coming to work.  Juarez admitted to the police she knew what time Gonzalez came into work.  Given that the initial DVRO was at least partly based upon a determination that Juarez had vandalized Gonzalez's car, Gonzalez's testimony at the renewal hearing, combined with the June 11, 2024 police report, was ample evidence to support the trial court's finding that Gonzalez had a reasonable apprehension that, if the restrictions of the initial DVRO were no longer in place, Juarez would resume her abusive acts towards him. (Compare *Cueto v. Dozier* (2015) 241 Cal.App.4th 550, 561–562 [focus is on evidence to support finding that applicant's fear of future abuse is reasonable].)

14

## DISPOSITION

The court's April 14, 2025 restraining order is affirmed.  In the interests of justice, each party to bear their own costs on appeal.

NOT TO BE PUBLISHED.


                                                    MOOR, J.

WE CONCUR:


HOFFSTADT, P. J.


KIM (D.), J.