Filed 5/13/26  M.C. v. W.G. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| M.C.,<br>     Plaintiff and Respondent,<br><br>     v.<br><br>W.G.,<br>     Defendant and Appellant. | D085412<br>(Super. Ct. No. EDV001108<br><br>ORDER MODIFYING OPINION<br>& DENYING PETITION FOR<br>REHEARING<br>NO CHANGE IN JUDGMENT |

THE COURT:

It is ordered that the opinion filed herein on April 24, 2026, is modified as follows:

The first sentence of the first paragraph on page 5 is deleted and replaced with the following sentence [the footnote remains]:

"The court heard the matter on October 24, 2024, without a court reporter."

The petition for rehearing is denied.

There is no change in the judgment.

O'ROURKE, Acting P. J.

Copies to:  All parties

Filed 4/24/26  M.C. v. W.G. CA4/1 (unmodified opinion)

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| M.C., | D085412 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. EDV001108 |
| W.G., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Imperial County, Michael Domenzain, Judge.  Affirmed.

W.G., in pro. per., for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

Defendant and appellant W.G., a self-represented litigant, appeals from an order renewing a domestic violence restraining order (DVRO; Fam. Code,[1] § 6345) against him and in favor of plaintiff and respondent M.C.  W.G. contends the renewal order should be reversed and vacated because the record lacks substantial evidence that M.C. had an objectively reasonable apprehension of future abuse, and the superior court applied non-statutory criteria in granting the renewal rather than the proper test under section 6345.  We hold W.G. has not demonstrated the court abused its discretion in renewing the DVRO, and thus affirm.

FACTUAL AND PROCEDURAL BACKGROUND

In October 2023, M.C. obtained a one-year DVRO against W.G. following W.G.'s September 2023 arrest on a Penal Code section 273.5, subdivision (a) charge (willful infliction of corporal injury on a victim).  As M.C. reported the incident to a police officer, in early September 2023, she and W.G. argued and W.G. tried to grab her cell phone when he suspected she was hiding things from him.  When she did not let him have her phone, W.G. grabbed M.C. by the throat, threw her to the bed and straddled her while trying to take her phone away.  As a result, M.C. sustained bruises on her left forearm.  She showed the officer photographs of her bruises.  The DVRO required W.G. to pay for a probation-certified 52-week batterer intervention program.  It also provided that the order would not be in effect if W.G and M.C. were "performing work duties at the same time" or "while [they were] attending classes . . . at the same time."  In November 2023, W.G.

---

[1]   Undesignated statutory references are to the Family Code.  M.C. has not filed a respondent's brief, but that does not affect W.G.'s burden to show the court abused its discretion in renewing the DVRO.  (*In re Marriage of Fregoso & Hernandez* (2016) 5 Cal.App.5th 698, 702.)

submitted proof he had enrolled in a domestic violence/anger management program.

About a year later in September 2024, W.G. sought ex parte emergency relief, asking the court to vacate the DVRO. He argued the order was based on asserted fraud by M.C. concerning her injuries and claims of abuse,[2] and that the proceedings violated his constitutional rights to due process and to a jury trial. W.G. asserted the restraining order had a negative impact on his life and career as a paramedic. According to W.G., the order no longer served its purpose as M.C. no longer felt threatened and there was no reason to subject him to the order's restrictions.[3] The court ruled W.G. had not met the burden to obtain ex parte emergency relief.

---

[2] In a sworn declaration made to "the best of [his] knowledge," W.G. argued the evidence "starkly contradict[ed]" M.C.'s claims that she suffered over a year of abuse, as they worked together on the same ambulance crew, enrolled in the same paramedic program, and she invited him to live with her family. W.G. said, "These are not the actions of someone experiencing ongoing abuse; rather, they demonstrate a close and voluntary professional and personal relationship." He claimed that M.C.'s statement about her suffering bruises was "knowingly false" as the police report discussing "yellowing" bruises would contradict her claim he inflicted injuries on her hours earlier. He also claimed the district attorney had "reject[ed]" the domestic violence charges. W.G. referred to text messages between him and M.C., stating only that they were "further information . . . showing obvious contradictions."

[3] In support of his request, W.G. attached several exhibits, including a September 2023 civil harassment restraining order request from M.P., a work-acquaintance of W.G.'s and M.C.'s then boyfriend, who stated that W.G. had access to firearms and threatened to kill him and beat him up, and that he feared for his safety. W.G. also attached a June 2024 letter from the California Department of Justice stated W.G. had no record of being a firearms purchaser, transferee or owner in the state's Automated Firearms System. He attached the police officer's narrative and arrest report for the 2023 Penal Code section 273.5 incident, as well as what appear to be print-outs of numerous personal text messages between him and M.C.

In early October 2024, M.C. sought an order renewing the DVRO, which was set to expire on October 19, 2024. In the section asking her to explain why she was "afraid or worried that [W.G.] might abuse her in the future" she wrote: "I was recently served with a Request for Order in which [W.G.] is asking for 'Temporary Emergency Orders[.'] Nothing has been signed by the judge indicating any kind of emergency orders granted. In addition, the original [DVRO] was set to expire on 10-19-24, yet [W.G.] set his court date for the 24th of October which just happens to be my birthday (he is well aware of this). I want to re-iterate [*sic*] to the court that while I was still afraid of [W.G.] his request and attached declaration make me even more afraid. He has obviously not taken responsibility for any of his actions and still believes himself to be the victim. I am sure that no matter what the outcome is he will seek revenge on me." M.C. claimed that W.G. had violated the DVRO by failing to return her property as the order required him to do. She continued: "He does not believe he EVER did anything wrong. This definitely leads me to believe that his abusive behavior will continue towards me if the chance is ever given to him."

M.C. also responded to W.G.'s request to vacate the DVRO by stating in part that there was no proof to support his claim that her reports were false. She said W.G. "obviously does not hold himself accountable for his behavior but rather blames myself for the predicament(s) he is in now." She stated that while he had registered for an intervention program, she did not know if he had completed it. She stated that W.G.'s petition has "awoken even more fear he will retaliate if he does not get his way."

The court heard the matter on October 24, 2025, without a court reporter.[4] M.C. and W.G. testified under oath. M.C. testified that she continued to feel fearful of W.G. She believed he had intentionally scheduled the hearing on her birthday, and was unsure whether he had been attending the court-ordered 52-week program. W.G. testified he had been attending a court-ordered 52-week anger management program since November 20, 2023. He objected to the DVRO's renewal, citing a lack of recent abuse and the impossibility of completing the program before the hearing. Thereafter, the court observed that W.G. had not completed his anger management class. It found he was "minimizing his conduct and . . . had not followed the Court's orders" in that he "failed to complete courses he was ordered to complete." The court ordered the DVRO renewed for five years. It denied W.G.'s request to vacate the DVRO, ruling it was untimely and sought to relitigate issues from a year earlier.

W.G. filed this appeal.

## DISCUSSION

### I. *Appellate Review Standards*

We have a limited role on appeal. We are required to presume the superior court's order is correct and draw all inferences in favor of its decision. (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133; *Ashby v. Ashby* (2021) 68 Cal.App.5th 491, 509.) "Thus, even if there is no indication of the trial court's rationale for [its ruling], the court's decision will be upheld on appeal if reasonable justification for it can be found. 'We uphold judgments if they are correct for any reason, "regardless of the correctness of

---

[4] As the DVRO renewal hearing went unreported, W.G. has proceeded with a settled statement (Cal. Rules of Court, rule 8.137).

the grounds upon which the court reached its conclusion." ' " (*Howard v. Thrifty Drug & Discount Stores* (1995) 10 Cal.4th 424, 443.)

Additionally, " 'error must be affirmatively shown.  This is not only a general principle of appellate practice but an ingredient of the constitutional doctrine of reversible error.' " (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.)  "[W]e cannot presume prejudice and will not reverse the judgment in the absence of an affirmative showing there was a miscarriage of justice." (*Century Surety Co. v. Polisso* (2006) 139 Cal.App.4th 922, 963; Cal. Const., art. VI, § 13.)  "[T]he appellant bears the duty of spelling out in his brief exactly how the error caused a miscarriage of justice." (*Paterno v. State of California* (1999) 74 Cal.App.4th 68, 106.)

Self-represented litigants are held to the same standard as those represented by trained legal counsel.  (*Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 984-985; *Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246-1247; *In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 830.)  " 'When a litigant is appearing in propria persona, he is entitled to the same, but no greater, consideration than other litigants and attorneys . . . .  Further, the in propria persona litigant is held to the same restrictive rules of procedure as an attorney.' " (*Bianco v. California Highway Patrol* (1994) 24 Cal.App.4th 1113, 1125-1126.)

## II.  *Legal Principles and Standard of Review*

"Section 6345 is set forth in the Domestic Violence Prevention Act (§ 6200 et seq.), which has the stated purpose of 'prevent[ing] acts of domestic violence, abuse, and sexual abuse and to provide for a separation of the persons involved in the domestic violence for a period sufficient to enable these persons to seek a resolution of the causes of the violence.' [Citation.]  In furtherance of this purpose, a trial court may issue a DVRO upon a showing

6

'to the satisfaction of the court, [of] reasonable proof of a past act or acts of abuse.' " (*Hart v. Hart* (2025) 115 Cal.App.5th 571, 575.)

Section 6345 governs a DVRO's renewal. A DVRO "may be renewed, upon the request of a party, either for five or more years, or permanently, at the discretion of the court, *without a showing of further abuse since the issuance of the original order*." (§ 6345, subd. (a), italics added.) " 'The legal standard for renewal of a DVRO is whether the protected party entertains a reasonable apprehension of future abuse. [Citation.] "[T]his does not mean the court must find it is more likely than not that abuse will occur if the protective order is not renewed. It only means the evidence demonstrates it is more probable than not there is a sufficient risk of future abuse to find the protected party's apprehension genuine and reasonable." [Citation.] An imminent and present danger of abuse is not required; there must only be a reasonable apprehension that "abuse will occur at some time in the future if the protective order is allowed to expire." ' " (*Hart v. Hart*, *supra*, 115 Cal.App.5th at pp. 575-576, quoting *Michael M. v. Robin J.* (2023) 92 Cal.App.5th 170, 179.) "It is 'unnecessary for the protected party to introduce or the court to consider actual acts of abuse the restrained party committed after the original order went into effect.' " (*Hart*, at p. 576, quoting *Ritchie v. Konrad* (2004) 115 Cal.App.4th 1275, 1284 (*Ritchie*).) This is because " '[i]t would be anomalous to require the protected party to prove further abuse occurred in order to justify renewal of that original order. If this were the standard, the protected party would have to demonstrate the initial order had proved ineffectual in halting the restrained party's abusive conduct just to obtain an extension of that ineffectual order.' " (*Michael M.*, at pp. 179-180.)

7

And the protected party need not show a reasonable apprehension of future *physical* abuse; the statute defines abuse broadly to include any behavior that could be enjoined under section 6320 such as harassing or disturbing the peace of the other party; the definition "encompasses 'a multitude of behaviors' that do 'not involve any physical injury or assaultive acts.' " (*Michael M. v. Robin J.*, *supra*, 92 Cal.App.5th at p. 179; *Eneaji v. Ubboe* (2014) 229 Cal.App.4th 1457, 1464 [behavior that may be enjoined under former section 6320 includes " 'molesting, attacking, striking, stalking, threatening, sexually assaulting, battering, harassing, telephoning, including, but not limited to, making annoying telephone calls . . . destroying personal property, contacting, either directly or indirectly, by mail or otherwise, coming within a specified distance of, or disturbing the peace of the other party' "].)

"In evaluating whether the requesting party has a reasonable apprehension of future abuse, the trial court ordinarily should consider the evidence and findings on which the initial DVRO was based. [Citation.] '[T]he underlying findings and facts supporting that order often will be enough in themselves to provide the necessary proof to satisfy that test.' [Citation.] 'Also potentially relevant are any significant changes in the circumstances surrounding the events justifying the initial protective order. For instance, have the restrained and protected parties moved on with their lives so far that the opportunity and likelihood of future abuse has diminished to the degree they no longer support a renewal of the order?' [Citation.] 'Also relevant are the seriousness and degree of risk, such as whether it involves potential physical abuse, and the burdens the protective order imposes on the restrained person, such as interference with job opportunities.' " (*Michael M. v. Robin J.*, *supra*, 92 Cal.App.5th at p. 180.)

8

We review the grant or denial of a request for a DVRO for abuse of discretion. (*R.R. v. C.R.* (2026) 117 Cal.App.5th 1262, 1272; *X.K. v. M.C.* (2025) 112 Cal.App.5th 1287, 1295.) "[A]n abuse of discretion occurs where ' " 'the trial court exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court.' " ' " (*Cueto v. Dozier* (2015) 241 Cal.App.4th 550, 560.) The court's exercise of discretion "must be guided by applicable legal principles, 'which are derived from the statute under which discretion is conferred. [Citations.] If the court's decision is influenced by an erroneous understanding of applicable law or reflects an unawareness of the full scope of its discretion, the court has not properly exercised its discretion under the law. [Citation.] Therefore, a discretionary order based on an application of improper criteria or incorrect legal assumptions is not an exercise of informed discretion and is subject to reversal.' " (*R.R. v. C.R.*, at p. 1272.) "Whether a trial court applied the correct legal standard to an issue in exercising its discretion is a question of law, requiring de novo review." [Citations.] ' "To the extent that we are called upon to review the trial court's factual findings, we apply a substantial evidence standard of review." ' " (*Ibid.*)

### III. *W.G.'s Contentions*

W.G. argues the record lacks substantial evidence of an objectively reasonable apprehension or fear of future abuse. Though he acknowledges that "new incidents are not strictly required," he argues the record "identif[ies] no post-order incidents, no contact, no threats, and no violations in the one-year term of the order" but rather, M.C. "testified only that she 'still feels fearful,' speculated the court date fell on her birthday, and expressed uncertainty about [his anger management] program status." He

9

argues the court's minute order "cites no objective, forward-looking facts indicating risk if the order lapsed." W.G. maintains M.C.'s statement that he might "retaliate if he does not get his way" is speculative and insufficient, and her mention of firearms is not evidence of objective risk, as the only evidence is that there was no record of his firearm ownership.

W.G. further argues the superior court applied "non-statutory criteria" in granting renewal—the "minimization" of his conduct and failure to complete his anger management class—which he maintains is legal error and an abuse of discretion. According to W.G., the test is "whether a reasonable person in [M.C.'s] position would fear future abuse if the order expired . . . ." W.G. argues the record shows his ongoing attendance at his anger management class, and asserts his non-completion of the course while it was still ongoing was legally irrelevant to the future-risk inquiry. W.G. cites *Ritchie*, *supra*, 115 Cal.App.4th 1275 and *Ashby v. Ashby*, *supra*, 68 Cal.App.5th 491 for the proposition that "[p]redictions untethered to post-order conduct do not satisfy [section] 6345's objective test."

W.G. finally argues the renewal violated his due process rights because it rested on speculation and assumptions, not admissible, substantial evidence. He again maintains the record shows "no post-order conduct and only generalized fear," which he says is not a sufficient evidentiary showing under section 6345.

### IV. *W.G. Has Not Demonstrated the Court Abused its Discretion*

W.G.'s arguments do not establish that the court's renewal order was an abuse of discretion. His main argument—the absence of misconduct or violations during the prior order's one-year term—misperceives the relevant test for renewing a DVRO. As stated above, further acts of abuse, actual misconduct or violations of the DVRO are not required. (*Ashby v. Ashby*,

10

*supra*, 68 Cal.App.5th at p. 515; *Hart v. Hart*, *supra*, 115 Cal.App.5th at p. 576; *Ritchie*, *supra*, 115 Cal.App.4th at p. 1284.)  In *Ashby*, heavily relied upon by W.G., the court emphasized that DVRO violations are "legally irrelevant" to the question of renewal.  (*Ashby*, *supra*, 68 Cal.App.5th at p. 515; see also *id.* at pp. 515-516 ["We have found no cases holding compliance with a DVRO precludes a finding of reasonable apprehension"].)  We have reviewed the cited pages of both *Ritchie* and *Ashby* and cannot find support for W.G.'s proposition that M.C.'s testimony about her continued fear of him must somehow be "[ ]tethered" to W.G.'s post-order misconduct in order to satisfy section 6345's test.

Further, in making his arguments, W.G. frames the test incorrectly.  It is not required that the protected person seeking renewal present "forward-looking facts" to obtain relief; both *Ashby* and *Ritchie* explain that the court is entitled to and " 'should consider the evidence and findings on which [the] initial [DVRO] was based in appraising the risk of future abuse should the existing order expire.' " (*Ashby v. Ashby, supra*, 68 Cal.App.5th at p. 510; *Ritchie*, *supra*, 115 Cal.App.4th at p. 1290.)  Thus, the incident underlying the original DVRO—W.G.'s physical violence against M.C. during an argument over his perception she was hiding things from him—is relevant. And the incident from which the original order stemmed " 'often will be enough in [itself] to provide the necessary proof to satisfy that test.' " (*Ashby*, *supra*, 68 Cal.App.5th at p. 511; see also *Michael M. v. Robin J., supra*, 92 Cal.App.5th at p. 180.)  Nor is the question whether a reasonable person in M.C.'s position would fear future abuse, but whether M.C. herself entertains a reasonable apprehension of future abuse (*Ritchie*, at p. 1290); that is, that the record contains evidence from which the court could conclude it is more probable than not there is a sufficient risk of future abuse to find M.C.'s

11

apprehension genuine and reasonable. (*Ibid*.; *Hart v. Hart, supra*, 115 Cal.App.5th at p. 576; *Michael M. v. Robin J., supra*, 92 Cal.App.5th at p. 179.)[5]

We conclude the evidence is sufficient for the court to reach that conclusion here. The underlying incident giving rise to the original order was an act of physical violence, which occurred when W.G. grabbed M.C. by the throat and threw her down. A year after the incident, W.G. denied it occurred, accusing M.C. of fabricating her injuries. In his September 2023 papers asking the court to vacate the DVRO, W.G. attached numerous personal text messages between him and M.C. without any meaningful explanation of their relevance. The court could reasonably conclude that W.G. remained inordinately focused on his and M.C.'s failed relationship. This, combined with the fact the record indicates the parties must maintain a working relationship, makes it more probable than not that there is a sufficient risk of future abuse to make M.C.'s fear genuine and reasonable.

---

[5] The authorities W.G. cites for his proposition (*Gonzalez v. Munoz* (2007) 156 Cal.App.4th 413, 420-423 and *Loeffler v. Medina* (2009) 174 Cal.App.4th 1495, 1504-1509) do not support it. In *Gonzalez*, the question was whether the court erred by failing to extend a temporary DVRO award as well as an order awarding the appellant custody of her daughter during the DVRO's pendency. (*Gonzalez v. Munoz*, at pp. 416-417.) The Court of Appeal held the trial court did not conduct the proper inquiry in failing to issue a final order granting custody of the child to her mother, particularly where the respondent never asserted he was the child's father and made no claim of paternity. (*Id*. at pp. 422-423.) *Loeffler v. Medina* involved an appeal from an order denying a plaintiff's application to terminate a DVRO. (*Loeffler v. Medina*, at p. 1498.) *Loeffler* explained that the standards set forth in *Ritchie* for a DVRO's renewal did not apply there, and in doing so, set out the correct rule: that in a renewal situation the petitioning party bears the burden of establishing by a preponderance of the evidence that he or she still has a reasonable apprehension of future abuse. (*Id*. at p. 1504.)

W.G.'s arguments disregard settled principles that require us to defer to the court's credibility determinations and make all reasonable inferences in support of the court's findings. (*Cueto v. Dozier*, *supra*, 241 Cal.App.4th at p. 560.) In her responsive declaration to W.G.'s request to vacate the original DVRO, M.C. asserted that W.G. had *access* to firearms, not that he owned them legally. Thus, W.G.'s submission of the California Department of Justice record does not contradict M.C.'s claim. The court believed M.C.'s assertions that she continued to feel fearful of W.G., in part because he had access to firearms. We are entitled to credit M.C.'s evidence. (Accord, *In re Marriage of Martindale & Ochoa* (2018) 30 Cal.App.5th 54, 62, fn. 5.)

As for W.G.'s claim that the court applied an incorrect legal standard by citing "non-statutory criteria," we emphasize that "[a]bsent any evidence to the contrary, we presume that the trial court applied the correct legal standard." (*Cueto v. Dozier*, *supra*, 241 Cal.App.4th at p. 561.) W.G. has not rebutted that presumption. In *Cueto*, the Court of Appeal found the protected party and DVRO renewal applicant, Cueto, had shown a reasonable apprehension of future abuse. In doing so, it observed that in addition to accounting for the violent incident that triggered the initial DVRO, there was "nothing in the record to suggest that circumstances have changed and that [the DVRO subject] Dozier had 'moved on with [his] li[fe] so far that the opportunity and likelihood of future abuse has diminished.' " (*Cueto*, at p. 562, quoting *Ritchie*, *supra*, 115 Cal.App.4th at p. 1291; see also *Michael M. v. Robin J.*, *supra*, 92 Cal.App.5th at p. 183 [summarizing *Cueto*'s holding].) Likewise, in *Michael M.*, the Court of Appeal found "nothing in the record suggest[ed] that Michael [the subject of the DVRO] had moved on with his life," as a week before the renewal hearing he sent a hostile text to the DVRO renewal applicant in violation of the existing DVRO. (*Michael M.*, at p. 184.)

13

Again, just weeks before the DVRO was to expire, W.G. claimed in his motion to vacate the order that M.C. had falsified the 2023 incident. The court was entitled to rely on such claims to reach the conclusion that W.G. was minimizing his behavior leading up to the DVRO. The court's finding of W.G.'s minimization is in effect that he had not moved on with his life so as to diminish the likelihood of future abuse, or eliminate or render unreasonable M.C.'s fear of such abuse, particularly in circumstances where the parties had to maintain a work relationship.

W.G. claims the record shows he was still attending his anger management class, and that the court's finding otherwise is factually wrong and legally irrelevant to future risk. Even if that were the case, we conclude the court properly considered the other evidence to assess the reasonableness of M.C.'s claim that she feared future abuse by W.G..

In sum, W.G. has not demonstrated the court's order renewing the DVRO was beyond all bound of reason, and hence an abuse of discretion.

## DISPOSITION

The order is affirmed.

O'ROURKE, Acting P. J.

WE CONCUR:

DO, J.

KELETY, J.